W. ELLIOTT WOODWARD & another *vs.* CITY OF BOSTON.

Suffolk. March 11. — April 9, 1874. COLT & ENDICOTT, JJ., absent.

A stipulation in the advertisement of an auction, that a building to be sold for cash down, should be removed within five days from day of sale, is a condition, and although the price be paid by the purchaser, if the building be not removed before the expiration of the time limited, the sale is voidable at the option of the seller.

No stipulation can be implied from a sale by a city of its private property, that the public officers who by law have charge of the streets, will grant a license to obstruct them.

A statement by an auctioneer, made as an inducement to purchase, that a building is suited for tenement purposes and could be removed for that purpose, but not shown to be made or understood to vary the terms of a printed advertisement, is a statement of opinion only, and cannot be construed as an implied guaranty that the proper authorities would grant a permit to remove the building through the public streets.

Evidence that when buildings are sold by the city of Boston, they are sometimes removed as a whole, by a license from the proper authorities; that the auctioneer employed by the city to sell a building represented that it was suitable for tenement purposes and could be removed for that purpose; that from the size of the building and the width of the streets it could be removed as a whole, does not by implication annex to the contract of sale a stipulation that the purchaser will be permitted so to remove it.

TORT in the nature of trover for the conversion of two wooden buildings, with a count in contract, alleging a breach on the part of the defendant in refusing to allow the plaintiffs to remove the buildings, both of the counts being for the same cause of action.

The case was reserved by *Wells,* J., for the consideration of the full court upon the following report :

" The plaintiffs offered evidence tending to prove the following facts: On May 8, 1869, the city of Boston was owner of a parcel of land in said city, and of the building thereon, which is that in respect of which this action is brought. The building rested on cross-timbers, to which it was not attached ; and on that day it was voted by the committee on public lands of said city to sell the building. Said vote is recorded in the following form : ' Voted, that the superintendent sell at public auction the building belonging to the city, on Dover Street, to be removed within five days after said sale.' This vote was approved by the mayor, May 31. The superintendent of public lands accordingly employed one Hatch to sell said building at public auction, and Hatch adver

tised the sale as follows : ' June 9, 1869. Sale of city property By order of the superintendent of public lands. This day at 4 o'clock, on the premises, will be sold for cash down the large two-story wooden building standing on the south corner of Dover Street Bridge and Harrison Avenue. It is about 15 by 170 feet long, to be removed in five days from day of sale. Also one two-story wooden building, No. 418 Harrison Avenue, to be removed immediately.' The evidence concerning the latter building was substantially similar to that herein stated concerning the former.

" Hatch was the auctioneer usually employed by the city for sales of buildings, and buildings so sold were sometimes subse quently removed as a whole, by license from the proper authority. The sale was held June 9, according to the advertisement, and the plaintiffs, having seen the latter, were present and heard Hatch state, as an inducement to purchase, that the building was suited for tenement purposes and could be removed for that end, and that a gentleman was present who would lease land in the neighborhood, on which to place the buildings, at a low rate.

" The buildings were bought by the plaintiffs, and the price paid ; it was received by the city June 16. After said sale the plaintiff, Woodward, at once made arrangements to have the long building cut crosswise into four parts, and both of the buildings moved on to land of his own on Harrison Avenue, within a half a mile, and applied for a license allowing him to remove them through Harrison Avenue to that end. He obtained such a license Saturday afternoon, but the next Monday morning, before he had acted on it, and within five days from the sale, the license to move was revoked, and the plaintiff was notified to remove the buildings within the said five days. No objection was made to the plaintiffs' tearing down and then removing the buildings. Harrison Avenue was sixty feet wide throughout the part over which the plaintiffs' buildings would have had to pass. The dimensions of the buildings were, respectively, 15 feet by 170 and about 30 by 40. Woodward thereupon notified the city that the plaintiffs intended, and they did intend, to move said buildings upon his said land, and to put them in order and repair, so as to use them as tenement houses, but did not succeed in obtaining a second license. About a fortnight after said five days had elapsed, the houses were sold a second time by the city, and were

taken down by the purchaser. It was agreed that any printed book purporting to be ordinances of the city of Boston may be referred to so far as applicable to the case.

"If in the opinion of the full court the plaintiffs can recover for said buildings or either of them on the counts in tort or in contract for breach of the contract of sale, this case is to stand for trial; otherwise, judgment for the defendant."

*O. W. Holmes, Jr. & E. J. Holmes,* for the plaintiffs. The agents of the city sold two buildings in accordance with a vote requiring the plaintiffs to remove them within five days. The street through which they were to be removed was sixty feet wide. One building was fifteen and the other thirty feet wide. A license to remove them was granted, and the plaintiffs were about to do so when the license was revoked, and not renewed within the five days. The buildings were not removed, and the city sold them a second time, which is the conversion complained of. 1. Assuming, what does not appear, that notice was given at the sale that the removal would be required, the stipulation was not a condition. If this had been a contract to sell instead of an executed sale, it could hardly be maintained that the defendant's undertaking to deliver was dependent on the plaintiffs' agreement to remove within five days; the latter term does not go to the root of the contract. But the property in the houses had vested in the plaintiffs and had been paid for; and it takes stronger words to devest property than to excuse performance of an executory undertaking. If nothing had been said, the plaintiffs would have been bound to remove within a reasonable time; but if they had not done so, the city would not have been authorized to convert their property to its own use. A stipulation fixing what should be deemed a reasonable time does not affect the other rights of the parties. The defendant must stand strictly on a condition defeating the plaintiffs' title, not on a mere right to rescind. Rescission requires that the rescinding party should put the other *in statu quo.* It will be observed that the money went into the city treasury after the time allowed for removal, and there has never been any offer to return it.

2. The plaintiffs bought the "buildings," not a mere congeries of planks. A contract to deliver a building would not have been satisfied by delivering the materials of one. *Barr* v. *Gibson,* 3 M.

& W. 390, 399, 400. *The. Queen* v. *Manning,* L. R. 1 C. C. 338 341. The plaintiffs were to remove what they had bought within five days. If it were a condition that they should do so, still a condition is discharged if performance is made illegal. It was contemplated at the time, that a license to remove the building should be granted. And reasonably contemplated, for the dimensions of the buildings were such as not to interfere with the travel on Harrison Avenue. A license was issued, but was revoked before the plaintiffs had acted on it. That was made illegal which had been expected to be and had been legal. The exigencies which made the revocation of the license expedient were not perpetual. They had not existed a day before. They reasonably might be expected not to last beyond a limited time; for the width of the street shows that under ordinary circumstances the license might properly be granted. If words not sounding in defeasance are to be read as going to the foundation of the plaintiffs' title, the implied condition must at least be construed so as to allow them a reasonable time for a change of circumstances to render performance on their side possible, consistently with getting what they bargained for.

It is admitted that the city as a proprietor must not be confounded with the city as legislator or custodian of the public welfare. But the court will perceive that a different doctrine from that for which the plaintiffs contend would put them in the position of losing their purchase, because the vendor has made it impossible for them to remove what the vendor, as such, was bound to deliver.

*J. P. Healy,* City Solicitor, for the defendant.

MORTON, J. The contract upon which the rights of the parties depend is contained in the advertisement of sale, which is as follows : " June 9, 1869. Sale of city property. By order of the superintendent of public lands. This day at 4 o'clock, on the premises, will be sold for cash down the large two-story wooden building standing on the south corner of Dover Street Bridge and Harrison Avenue. It is about 15 by 170 feet long, to be removed in five days from day of sale. Also one two-story wooden building, No. 418 Harrison Avenue, to be removed immediately."

The auctioneer had no authority to sell upon any other terms than those stated in the advertisement, and it is not shown that

he did so.　There is no proof that his statement at the sale, that the building was suited for tenement purposes and could be removed for that end, was intended or understood to vary the terms of the printed advertisement.　It was a statement of his opinion, and cannot be construed as an implied guaranty that the proper authorities would grant a permit to remove the building through the public streets.

Regarding the advertisement, then, as expressing the contract of the parties, the reasonable construction of it is, that the first named building was sold to the plaintiffs upon the condition that they should remove it in five days from the day of sale.　If this had been a sale by a private individual it would be entirely clear that the buyer took the risk of being able to remove it without tearing it down; that upon his failure to remove it, according to the condition of the sale, the seller might treat the contract as broken and resell it, and that no action could be maintained against him either for a conversion or for damages for a breach of the contract.　The principle is the same in this case.　The city of Boston was the seller, but like an individual proprietor it would be liable to the plaintiffs only upon the ground of an express or implied stipulation or guaranty that they should receive a permit to remove the building as a whole.　There is no express stipulation of this character, and we see no principle upon which such a stipulation can be annexed to the contract by implication. By the ordinances of the city of Boston, which are presumed to be known to both parties, the committee on public lands, by whom this sale was made, have the care and management of the lands belonging to the city, so far as relates to the improvement, sale and disposal of the same, while the right to grant permission to remove buildings through the public streets is vested exclusively in the board of aldermen.　Laws & Ordinances of 1869, 424, 628.　The committee on public lands had no right to grant such permission to the plaintiffs; there is nothing in this case to show that it undertook to do so, or to stipulate as a part of the terms of sale, that the board of aldermen should do so, and we are of opinion that the law does not imply such a stipulation from the nature of the contract and the situation of the parties.　In the sale of this building the city acted, in its capacity as a proprietor, in the management of property held for its profit and

advantage as a corporation, and as to it, has substantially the same rights and liabilities as a private individual. But in the maintenance and care of the public streets the board of aldermen act in a public capacity, in the discharge of duties imposed by the legislature for the public benefit. This distinction is well established.   *Oliver* v. *Worcester*, 102 Mass. 489.   No stipulation can be implied from a sale by the city of its private property, any more than in the case of a sale by an individual, that the public officers who by law have the charge of the streets shall grant a license to obstruct them.

The same considerations apply to the sale of the other building named in the advertisement.

It follows that as the plaintiffs cannot recover for either of said buildings for a breach of the contract of sale, there must be, according to the terms of the report,

*Judgment for the defendant.*