## JAMES H. OSGOOD *vs.* CITY OF BOSTON.

Norfolk.　November 13, 1895. — February 27, 1896.

Present: FIELD, C J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*City — Contract — Permit to move Building through Streets — Ratification.*

The authorities of the city of Boston having charge of the sale of buildings cannot bind the city by a guaranty giving to the purchaser of a building a permit to move it through the streets in any other form or on any other conditions than those prescribed by the city ordinances and the regulations of the board of aldermen; and, if such persons assume to guarantee the granting of a permit in any other way, or of any other kind, the purchaser is bound to know that they are acting without authority, and is not entitled to treat as a ratification of the unauthorized guaranty an order of the board of aldermen authorizing the issue of a permit "on the terms and conditions expressed in the ordinances of the city relating thereto."

CONTRACT, for breach of an alleged contract to grant to the plaintiff a permit to move a building through the streets of the defendant city. Trial in the Superior Court, without a jury, before *Braley*, J., who reported the case for the determination of this court, in substance as follows.

The plaintiff offered evidence tending to show that, about

December 15, 1890, the city architect of Boston directed a duly licensed auctioneer to sell a wooden building owned by the city, known as Chemical Engine House No. 5, which was standing upon land belonging to the city. Upon examination, the auctioneer discovered that the property was located on one of the streets through which the West End Street Railway Company ran its tracks and trolley wires, and the building could not be removed from the premises through the streets without cutting these wires. Thereupon he called the attention of the architect to this, and went with him to the city clerk, who called with them at the mayor's office to consult with him. The mayor was absent therefrom, but his secretary was present. The question of what arrangement could be made as to the removing of the building was then discussed, and it was believed by the parties that possibly a permit might be granted beforehand, but, upon examination of the ordinances, it was found that a building mover would have to make an application for a permit after the sale, and that it must be stated therein where the building was to be moved.

The secretary then told the auctioneer to go ahead and sell it, and guarantee a permit if applied for on or before January 2, 1891. The last meeting of the board of aldermen for that year was to be held on January 3, and the secretary wanted to have the application in on the day before. The mayor was not present, and it did not appear that his attention was called to this conversation afterwards. The secretary, however, stated that, upon questions arising out of moving permits, he had full authority for stating to anybody in interest that permits granted by the board of aldermen for the removal of buildings would be approved by the mayor without delay and without question, and that an objection would not be raised by the mayor. The auctioneer thereupon sold the building to the plaintiff by public auction, stating at the time that a moving permit would be granted, and giving him a receipt, dated December 31, 1890, for $280 in payment for the building, which was "to be removed within fifteen days from date, and moving permit guaranteed if applied for on or before January 2, 1891."

The money received from the sale was turned over by the auctioneer to the city treasury, and there remained. It had not been returned or offered to be returned, although counsel stated

at the trial that the city would return it. On December 31, the building mover, by the direction of the plaintiff, made application in writing for a permit to move the building, and the board of aldermen passed an order, on January 3, 1891, authorizing the superintendent of streets to issue a permit "on the terms and conditions expressed in the ordinances of the city relating thereto." Upon an application made for a permit from the superintendent of streets,* the superintendent offered to the plaintiff a permit, which provided that it was "issued and accepted upon the condition that the person accepting it shall, in all respects, conform to the statutes and the ordinances of the city of Boston, and the specifications in this permit"; and "that the person to whom this permit is issued shall not cross any steam or street railway tracks except in accordance with the written directions of the corporation using the same." The plaintiff objected to receiving this permit, on the ground that he could not remove the building unless the wires were cut, and it appeared that the railway company declined to cut them. The city did not give any other permit, and took no steps to have the wires cut. The plaintiff, being unable to remove the building without cutting the wires, declined to take the same, and it was subsequently sold by the city to other parties.

At the time of the purchase by the plaintiff, he proposed to have the building moved to a vacant lot of land owned by him, as described in the application for the permit. The plaintiff contended that the value of the building, if he had removed it to this lot, would have been much greater than the sum paid for it by him, and that he suffered damages by reason thereof.

At the close of the foregoing evidence, the defendant requested the judge to rule that the plaintiff could not recover. The judge so ruled; and found and ordered judgment for the defendant.

If the ruling was right, judgment was to be entered for the defendant; if the plaintiff could recover, then damages were to be assessed.

---

* The Revised Ordinances of 1890, c. 3, § 3, provide that "every person who desires to move a building through a street shall make application in writing to the superintendent of streets for a permit therefor, which application shall describe" the route over which it is to be moved and give its dimensions, "and shall be accompanied by the written consent of all railroad corporations whose tracks are to be encumbered by the moving of the building."

*E. C. Bumpus*, for the plaintiff.

*S. M. Child*, for the defendant.

KNOWLTON, J.   The only contract between the parties is that made at the time of the sale.   What the auctioneer stated orally does not differ in legal effect from the writing which was made soon afterwards.   The building was sold to be removed within fifteen days from date, and a moving permit was guaranteed if applied for on or before January 2, 1891.   Without such a permit the plaintiff could not remove it without tearing it down.   Such a permit was applied for before that date, but the application was not in accordance with chapter 3, section 3, of the regulations of the board of aldermen in effect at that time, which required that each application to move a building should be in writing, and accompanied by the written consent of all railroad corporations whose tracks were to be encumbered by the moving of the building.   The board of aldermen passed an order authorizing the superintendent of streets to issue a permit " on the terms and conditions expressed in the ordinances of the city relating thereto." Such a permit was accordingly issued, which contained, among other provisions, one that the person to whom the permit was granted should not cross any steam or street railway tracks except in accordance with the written directions of the corporation using the same.   The plaintiff declined to accept the permit on account of this provision, and did not remove the building within fifteen days.   The city thereupon again sold the building, and the plaintiff brings this action for damages for a breach of the contract.

Under the charter of the city the board of aldermen are vested with authority to make regulations in regard to the occupation and use of the streets, and the Pub. Sts. c. 113, § 27, contain a special provision in regard to regulations for the use of street railways.   Various ordinances and regulations have been made at different times in regard to the streets.   See Revised Ordinances, 1890, c. 18, §§ 1–3, cc. 20, 37 ; Revised Regulations, 1890, c. 3, § 3, c. 7, § 30.

The authorities of the city having charge of the sale of buildings could not bind the city by a guaranty giving a permit in any other form or on any other conditions than those prescribed by the city ordinances and the regulations of the board of aldermen.   If they assumed to guarantee the granting of a permit in any other way, or of any other kind, the plaintiff was bound to

know that they were acting without authority.  *Woodward* v. *Boston*, 115 Mass. 81.   Even if the city government, by a concurrent vote of both branches of the city council, could have made a valid contract to give a permit in violation of the city ordinances or the regulations of the board of aldermen, which we do not decide, it is clear that the auctioneer, the city architect, and the mayor's secretary could not bind the city by such a contract.

The action of the board of aldermen in ordering the permit was not a ratification of the contract interpreted as the plaintiff interprets it.   They apparently assumed that the guaranty was merely to give a permit if the plaintiff brought himself within the ordinances and regulations in regard to the subject.

These considerations dispose of the case now before us.   On the failure of the plaintiff to remove the building within fifteen days, the defendant might treat the contract as broken, and sell the building again.   The willingness of the defendant to return to the plaintiff the money that he paid for the building will doubtless make it unnecessary at any time to consider whether the plaintiff is right in his construction of the contract which the auctioneer assumed to make.

*Judgment for the defendant.*