SORENSON v. BROADDUS.    (No. 822.)

(Court of Civil Appeals of Texas. El Paso. March 28, 1918. Rehearing Denied May 2, 1918.)

1. REFORMATION OF INSTRUMENTS ⚖=45(3)— SPECIFIC PERFORMANCE—EVIDENCE.

In a suit to reform and specifically enforce contract for sale and exchange of lands in which plaintiff based his right of action on the fact that property was signed up under a government irrigation project, and that contract by mistake failed to make defendant take subject to such project, evidence *held* sufficient to show that property was signed up under the project.

2. ACTION ⚖=69—CONTRACT FOR SALE AND EXCHANGE OF LANDS—RELIEF AS DEPENDING ON OTHER LITIGATION.

Specific performance of a contract for sale and exchange of lands whereby defendant was to assume plaintiff's contract with a water user's association under a government irrigation project is not dependent on termination of litigation seeking adjudication of water appropriation under the project and the respective rights of parties in the waters; there being no claim that assessments on the lands involved in the suit for specific performance had not been paid.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Suit by H. W. Broaddus against John Sorenson. From a judgment for plaintiff, defendant appeals. Affirmed.

J. A. Buckler, of El Paso, for appellant. J. U. Sweeney and J. E. Quaid, both of El Paso, for appellee.

WALTHALL, J. This suit was brought by H. W. Broaddus against John Sorenson for reformation of a written contract for the sale and exchange of lands, and for specific performance of the contract so reformed. The Broaddus lands are situated in Dona.

Ana county, N. M., and the Sorenson property consists of certain lots in the city of El Paso, Tex.

The contract pleaded and sought to be enforced is as follows:

"$500.00.           El Paso, Texas, May 3, 1916.

"Received of H. W. Broaddus, the sum of five hundred dollars, earnest and forfeit money, and post purchase money, to close trade of sale to W. H. Broaddus, of the following described property at the total sum of $———, being the east 63x78 feet of lots one, two, and three, block two hundred and thirty-one (231), Campbell addition. Terms of sale, two thousand dollars ($2,000.00), cash on delivery of deed, and also a clear deed to one hundred and fifty (150) acres of land in the valley, situated on the main gravel road west of the Rio Grande river, about one-quarter of a mile north of La Mesa, N. M., known as the Lohman tract, about thirty miles north of El Paso, Tex., except forty-five hundred dollars ($4,500.00) now against the same land, which John Sorenson is to assume, and H. W. Broaddus further agrees to assume five thousand dollars ($5,000.00) now against above described lots, deed to be made to H. W. Broaddus, the other to John Sorenson, and all taxes to and through the year 1915 to be paid by the seller, and transfer of title to be made and executed by warranty deed; deed to be delivered and accepted on or before June 1, 1916, and deferred payments to be secured by vendor's lien and deed of trust on said premises. Abstract to be furnished to date of sale by seller and title to be good. Property to be kept fully insured with loss payable clause in favor of lien.
                      "[Signed] H. W. Broaddus.
"I accept this contract of sale by McKee Bros.         [Signed] John Sorenson, Agent."

For reformation of the contract, it was alleged that in drawing up the contract, by accident, mutual mistake, or omission, the contract failed to state that Sorenson was to take the land subject to the Elephant Butte irrigation project. Sorenson answered by general demurrer, general denial, and by special pleas, more fully stated later herein when necessary.

The case was tried without a jury. The court overruled the appellant's exception; found that appellee was entitled to a reformation of the contract to the effect that Sorenson had assumed the contract Broaddus had with the Water Users' Association under the Elephant Butte irrigation project for water for irrigation purposes for said land; that Broaddus is vested with title to said land, and was entitled to specific performance of the contract as reformed, and so entered judgment.

[1] Under the first assignment appellant makes the contention, first, that Broaddus, having based his suit on the agreement that his land was under the Elephant Butte irrigation project, and that the land had been signed up under that project, and irrigation water thereby secured for the land, he was not entitled to recover unless he sustained this allegation, and this he had failed to do. While the court made no special finding that the land had been signed up for water for irrigation, H. W. Broaddus testified:

"I own the 150 acres in controversy. * * * This land is signed up under the ditch with the government. Yes; I have water there. I am familiar with the manner in which water rights are secured on property in the Rio Grande valley."

W. A. McKee, the land agent effecting the sale, testified:

"Defendant, Sorenson, asked about the irrigation and whether or not the land was signed up. * * * That I did talk with Mr. Sorenson about the land being signed up under the Elephant Butte project, and I told him that it was under that ditch and signed up ready for irrigation, and he understood it was so signed up."

Mr. Sorenson testified also that McKee told him that the land was under the Elephant Butte irrigation system and signed up, but that he did not tell him anything about the procedure concerning it; had lived in El Paso for 37 years; had in person inspected the land, and knew "the government was building the dam for the purpose of irrigating the land"; said:

"When Mr. McKee told me this land was under the irrigation system and had been signed up for irrigation purposes, I believed him."

The fact that the land was signed up under the government's Elephant Butte irrigation project was clearly shown. It is also the contention of appellant under the first assignment that the abstract tendered by appellee failed to show a good title in appellee, but did show liens on the land in addition to the one assumed, and that suits were pending against the land that would affect the title.

It might be sufficient to say that the trial court found that the title was in appellee, and that it could not be expected that we should pass upon a lengthy abstract in order to determine the fact of title. The evidence is undisputed that appellant's attorney had passed upon the title and pronounced it good. We have examined the portion of the title in which it is claimed that the title through Martin Lohman and wife, who once owned the land, is not clear and does not show a good title. It would serve no good purpose to discuss that part of the title; suffice it to, say that the objection is not tenable.

[2] While the record does show that at one time certain suits were filed in Dona Ana county in which the title to said lands were, involved by the then owners, the matters involved in the suits are shown by the record to have been adjusted, and, while the record does not affirmatively show that the suits were dismissed, it does not show that the suits, or any of them, are still pending, except as hereinafter stated. It is suggested that a suit filed by O. C. Snow in the district court of Dona Ana county, N. M., against Abelos, and a large number of other water users under the Elephant Butte project in that county, and required to be brought by the United States Reclamation Act for the purpose of adjudicating the water appropriation under that system, should be determined before specific performance should be decreed.

Richard F. Burges testified in reference to the institution of that suit. He said, in substance, that he was the attorney for the El Paso Valley Water Users' Association. In the negotiations of the contracts with the United States government, the associations in Texas and New Mexico endeavored to work in harmony, not only in the contracts with the government, but with each other as to a division of the waters of the Rio Grande; that he co-operated with Mr. Holt and Mr. Southerland, the attorneys for the Elephant Butte Water Users' Association, and conferred with Mr. Holt in reference to bringing the suits in Texas and New Mexico for the same purpose; that under the Reclamation Act project, that was the only way there had been any attempt to handle that matter, that is, the distribution of water to lands under the Reclamation Act for irrigation; that the Reclamation Act does not attempt to destroy any vested rights or to interfere with any existing water rights; that when an irrigation project was inaugurated the Reclamation Act, or the Department of Justice, required proceedings to be instituted to ascertain what are the vested rights of people within the confines of the supposed irrigation project and the waters of the stream which the government is proposing to control.

In pursuance to these instructions a suit was instituted by himself in the name of Austin and others, against some 1,500 or more defendants in El Paso county, Tex., and the same character of suit was instituted in the name of Oscar C. Snow against a large number of defendants in Dona Ana county, N. M. We do not think it necessary to state in detail the evidence given by Mr. R. F. Burges, but state only enough to show that the suit of O. C. Snow was a part of the plan through which the federal government in the Reclamation Act undertakes to control and serve the waters of the Rio Grande to lands for irrigation purposes. Through the plan outlined by Mr. Burges, the operating expenses of the system are paid by prorated assessments on the lands signed up under the system for irrigation, and the debt to the government for the irrigation project is secured by pledge of all the lands under the project that enters into the Water Users' Association, and the suits are instituted for the purpose of ascertaining the respective rights that the parties signing up had in the waters of the Rio Grande at the time the United States government filed upon all the unappropriated waters of the Rio Grande.

We think the purpose of the Oscar C. Snow suit is further clarified by certain letters from Wade, Taylor & Wade, attorneys in New Mexico, written in explanation of the Snow suit, and introduced in evidence by defendant, to the effect that the suit was filed by direction of the Water Users' Association under the Reclamation Act for the purpose of determining the owners of water rights and the respective priorities of those owners in the flowing waters of the river. In the suit filed, the association sought to enforce certain assessment levies upon certain delinquent land owners where payment had not been made. It is not claimed that assessments under the Water Users' Association project made on the lands involved in this suit had not been paid.

We think that under the trial court's finding of fact Sorenson took the land subject to whatever method the government under the Reclamation Act had then or thereafter would adopt, whether through the Snow suit or otherwise, in handling the matter of furnishing water for irrigation through the Elephant Butte irrigation project, and comes within the terms of the contract as reformed, and was assumed by him.

Finding no reversible error, the case is affirmed.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes