DENNIS E. CONNERS & others *vs.* CITY OF LOWELL & others.

Middlesex.    March 30, 1923. — September 14, 1923.

Present: RUGG, C.J., DeCOURCY, CROSBY, & PIERCE, JJ.

*Lowell. Municipal Corporations,* Officers and agents. *Contract,* Validity. *Equity Jurisdiction,* Suit under G. L. c. 40, § 53, Laches.

The high school commission of the city of Lowell, established by Spec. St. 1919, c. 178, in the performance of the functions for which it was created is bound by the requirements of § 27 of the city charter, St. 1911, c. 645, and a contract made by the commission which involves a liability on the part of the city in excess of $500 is invalid if the order authorizing it is not " proposed in writing " and notice of it " given by the city clerk in at least one daily newspaper of the city, not less than one week before its passage."

Laches will bar a suit under G. L. c. 40, § 53.

Without observing the requirements above described, the high school commission of Lowell purported on March 12, 1920, to make a contract for the construction of a high school for the price of $1,500,000, work was begun under it three days later and was continued without interruption until September, 1922, when the building was completed. Monthly payments were made to the contractor beginning in April, 1920. On March 24, 1920, a second contractor familiar with the situation wrote to the high school commission and on May 7, 1920, to the contractor setting forth a contention that the contract was illegal and threatening legal proceedings if steps were not taken to do away with the illegalities. No such steps were taken and the second contractor did nothing until October 30, 1922, when with twenty-one other taxable inhabitants of Lowell, who joined with him at his request solely to make up the statutory number of petitioners and on his promise to hold them harmless, he brought a suit under G. L. c. 40,

§ 53, to have further payments under the contract enjoined. The building was in the central part of the city. *Held*, that a finding of laches on the part of the plaintiff was warranted, and that by reason of such laches the suit must be dismissed.

BILL IN EQUITY, filed in the Supreme Judicial Court for the County of Middlesex on October 30, 1922, under G. L. c. 40, § 53, by twenty-two taxable inhabitants of Lowell against that city, its mayor, its auditor, its treasurer, its architect, the members of its high school building commission and Daniel H. Walker, seeking to enjoin payments to Walker under the provisions of the contract described in the opinion.

The suit was referred to a master. Material findings by the master are described in the opinion. By order of *Pierce*, J., an interlocutory decree was entered confirming the master's report and the suit was reserved for determination by the full court.

*J. H. Backus*, (*J. F. Meagher* with him,) for the plaintiffs.

*B. B. Jones*, for the defendants.

RUGG, C.J. This is a suit in equity brought by twenty-two taxable inhabitants of Lowell under G. L. c. 40, § 53, to restrain an alleged illegal expenditure of money by the defendant city. The case was referred to a master, whose report has been confirmed. No evidence is reported and therefore his findings of fact must be accepted as final. The case comes before us by reservation.

The controversy arises out of the construction of a high school building on land of the defendant city.

1. The first point to be decided is whether a contract for the construction of that building was illegal. That contract was executed by the high school building commission with the defendant Walker after rejecting the single bid, which was made by Walker, received pursuant to advertisement in newspapers published in Lowell, Boston and New York, without readvertising for bids, without notice to the public of any change in specifications, upon terms differing in important particulars from those on which the public bids were invited. The contract price was in excess of $1,500,000. No notice of the vote of the commission making

or authorizing the proposed contract with Walker was given by the city clerk of Lowell in any newspaper seven days in advance of the execution of the contract with Walker.

It is provided by the city charter of Lowell, St. 1911, c. 645, in § 27, that " Neither the municipal council nor the school committee shall make or pass any order, resolution or vote . . . making or authorizing the making of any contract involving a liability on the part of the city in excess of five hundred dollars, unless the same is proposed in writing and notice is given by the city clerk in at least one daily newspaper of the city, not less than one week before its passage," with exceptions not here material. A high school building commission for Lowell was established by Spec. St. 1919, c. 178, whereby an earlier statute for the same general purpose was repealed. The powers of that commission are set forth in § 2 in these words, so far as here pertinent: " The said commission is hereby authorized, in the name and behalf of the city, to erect . . . a high school building and a building for a heating and power plant in connection therewith. So far as may be necessary for the purposes of this act, the commission shall have all the powers and duties conferred and imposed by " St. 1911, c. 645, " upon the municipal council of the said city with respect to the erection, alteration, repair and equipping of school buildings . . . and shall succeed to the rights and liabilities, and perform the duties of the municipal council relating to the construction of said buildings. . . ."

It is plain from these provisions of the special act creating the high school building commission that that commission in its performance of the functions for which it was created is bound by all the limitations and requirements of the city charter binding the municipal council. Authority is conferred upon the commission to erect the school buildings. But that authority must be exercised according to the general power conferred and in obedience to all the duties imposed on the municipal council by the city charter. The words of § 2 mean that only those charter powers of the municipal council essential for the erection of the schoolhouse are vested in the commission, and that all such powers

are subject to every charter duty resting upon the municipal council when it exercises such powers. The reason for the phraseology of § 2 doubtless is to be found in the provision of § 26 of the city charter. By that section the municipal council is given full power over the erection of school buildings. But for the special act creating the commission, the erection of the high school buildings would have been in the hands of the municipal council. The special act took that power from the municipal council and transferred it to the commission. It was the plain intent of the Legislature in framing § 2 of the special act to require of the commission observance of every safeguard hedging the action of the municipal council with respect to its control of the general subject of building schoolhouses. It is only by holding the commission to be substituted `for the municipal council touching the erection of these school buildings, and bound by its limitations as well as clothed with its powers under the charter, that effect can be given to the clear phrase of § 2. Further discussion of the particular words and phrases of § 2 of the special act cannot make more plain its unambiguous meaning or disclose more certainly the unmistakable purpose of the General Court in using them. The language of that section is too explicit to admit of doubt.

The power of the commission to .bind the city by contract depends wholly upon the authority conferred by the special act. The commission had no inherent powers. It must follow exactly the path pointed out by the special act or its conduct is ineffectual to bind the city. A contract made by it in any other way than in strict compliance with all the prerequisites, conditions and forms prescribed in the special act is illegal and does not become an obligation of the city. It is a contract *ultra vires* the statutory power of the city.

The defendant Walker is bound by the limitations imposed by the special act. Those having business relations with a city are charged with notice of the scope of authority of those professing to act as its agents. Benefit to the city is irrelevant in this connection. Walker gains no advantage from an instrument in form a contract but in truth a nullity under the law because not made in conformity with what

the Legislature has prescribed as essential to the making of an obligation of the city.

These principles are firmly settled. They have been elaborated in numerous decisions. There is no occasion further to amplify them. *Adams* v. *County of Essex*, 205 Mass. 189. *United States Drainage & Irrigation Co.* v. *Medford*, 225 Mass. 467. *McGovern* v. *Boston*, 229 Mass. 394. *Bay State Street Railway* v. *Woburn*, 232 Mass. 201. *Simpson* v. *Marlborough*, 236 Mass. 210. *Merrill* v. *Lowell*, 236 Mass. 463. *Boston Electric Co.* v. *Cambridge*, 163 Mass. 64. *Higginson* v. *Fall River*, 226 Mass. 423. *Osgood* v. *Boston*, 165 Mass. 281. *Goddard* v. *Lowell*, 179 Mass. 496.

It is not contended that the commission in attempting to enter into a contract with Walker made any effort to conform to the requirements of § 27 of the city charter of Lowell. Confessedly the commission assumed that the requirements of that section were not binding on it. That error vitiated its contract with Walker. The city was not bound thereby.

2. The form of contract between the commission and Walker for building the schoolhouse was executed on March 12, 1920. Pursuant thereto Walker began work on March 15, 1920, and continued without interruption until September, 1922, when the building was completed. Beginning with April, 1920, and continuing until October, 1922, monthly payments were made from the city treasury to Walker on account of the building aggregating more than $1,500,000. A balance on account of the price named in the form of contract and for extras, of about $100,000 according to the claim of Walker, remained unpaid when this petition was filed on October 30, 1922. The plaintiff Conners read and was familiar with the specifications at the time of the original advertisement for bids in November and December, 1919. He knew that the commission contemplated that work should start forthwith, that subcontractors would be employed, and that payments were to be made on account as the work progressed. On March 24, 1920, he wrote to the chairman of the commission calling attention to the illegality of the contract made by the commission with Walker and asserting his belief that injunctive

relief could be had against any expenditure of city money under the contract, suggesting that the contract be surrendered and a new one be made in accordance with the requirements of law, and concluding with the statement that in the absence of some action by the commission he would take appropriate legal steps. The chairman replied by letter declining to accede to the intimations of Conners. On May 7, 1920, Conners wrote to the defendant Walker with reference to the illegality of his contract with the commission, to which no reply was made. Conners knew that the work was going on and from its commencement until its conclusion kept informed as to its progress.

The building is located in the central part of Lowell near the City Hall. There was a delay of more than two years and seven months on the part of Conners after his letter to the chairman of the commission asserting the illegality of the contract before the filing of the bill in the present suit. In that interval the construction of the building, commenced only a few days before the date of the letter, was prosecuted to completion. The allegation of the bill is that all the plaintiffs had knowledge by March, 1920, of facts on which the claim of invalidity of the contract with Walker rests, and that allegation is admitted by the answer. None of the plaintiffs, other than Conners, appeared at the hearings before the master as witnesses or otherwise. All the plaintiffs are inhabitants of Lowell. The plaintiff Conners is a building contractor and the other plaintiffs signed the bill of complaint at his request solely to make up the statutory number of petitioners and on his promise to hold them harmless.

The finding of the master is that, so far as it is a question of fact, the plaintiffs did not use due diligence in bringing this suit and are guilty of laches.

This finding is abundantly justified by the facts from which the final inference is drawn. It is not necessary to examine the excuses for delay in not instituting proceedings earlier. They are too insubstantial to require discussion.

In one of the early cases under the statute authorizing proceedings in equity to restrain illegal expenditure of money

by municipalities occurs this statement: "It is a well-established rule in equity that if a party is guilty of laches or unreasonable delay in the enforcement of his rights, he thereby forfeits his claim to equitable relief. This rule is more especially applicable to cases, where a party, being cognizant of his rights, does not take those steps to assert them which are open to him, but lies by, and suffers other parties to incur expenses and enter into engagements and contracts of a burdensome character. . . . The facts, bearing on this part of the case as presented by the petitioners, bring it very clearly within the operation of this salutary rule." *Tash* v. *Adams*, 10 Cush. 252, 253. This principle was followed in *Fuller* v. *Melrose*, 1 Allen, 166. In those cases relief was denied. In those cases, as in the case at bar, the alleged illegal work had been substantially completed before the petition was presented. That factor with reference to public transactions of general interest was held to constitute such laches as to bar affirmative action by the court. The case at bar is indistinguishable from these two authoritative decisions. It is manifest that the plaintiffs are not entitled to relief in this proceeding. *Stewart* v. *Finkelstone*, 206 Mass. 28, 36, 37, and cases there collected. *Loud* v. *Pendergast*, 206 Mass. 122, 124. *Coram* v. *Davis*, 209 Mass. 229, 250. *Snow* v. *Boston Blank Book Manuf. Co.* 153 Mass. 456, 458. *Fordyce* v. *Dillaway*, 212 Mass. 404, 411. *Justice* v. *Soderlund*, 225 Mass. 320, 324.

                                        *Petition dismissed.*