STATE EX REL. SMITH v. LEONARD.

4-4301

Opinion delivered June 8, 1936.

*Henry E. Spitzberg,* for appellant.

*Buzbee, Harrison, Buzbee & Wright,* for appellees.

McHANEY, J. Appellee Roy V. Leonard was formerly the State Treasurer for the State of Arkansas, serving as such from 1931 to 1935, and the appellee Fidelity and Casualty Company of New York was the surety upon his official bond. As such State Treasurer he deposited at different times in the Planters Bank and Trust Company of Forrest City, Arkansas, the sum of $37,500 of State funds, pursuant to a contract between said bank and the State Depository Board. Said deposit was secured by a pledge of bonds as authorized by law. Thereafter, from time to time appellee Leonard, as State Treasurer, made withdrawals from said deposit in said bank and at the same time permitted said bank to withdraw a like

portion of the bonds it had pledged as collateral, until on January 11, 1932, when said bank was closed and placed in charge of the State Bank Commissioner, the amount of the deposit therein was $10,000, which was secured by $10,000 of bonds of Howard and Sevier Road Improvement District No. 1. Thereafter an order was entered in the St. Francis Chancery Court freezing the deposits in said bank so as to make them payable 15 per cent. February 1, 1933, 35 per cent. February 1, 1934, and 50 per cent. February 1, 1935. An agreement was made between the State and said bank that it would not call for its deposit until the maturity of the bonds it held as collateral security for said deposit, which was September 1, 1933. At that time the value of the bonds was doubtful, being quoted on the market at 35 per cent. to 50 per cent. of their face value. Counsel for the bank proposed a cash compromise settlement of the State's claim of $4,000 by writing a letter to the Attorney General to this effect. Under date of January 9, 1933, the then Attorney General, Hon. Hal L. Norwood, addressed a letter to the bank's attorney as follows:

"Your letter of the 6th instant would have been answered sooner but it was of such importance that I wanted to give it deliberate consideration.

"I note that when the Planters Bank & Trust Company was closed in January, 1932, that the State had on deposit $10,000 and held as security the same amount of old road improvement district bonds; that when the bank was permitted to open it was agreed that the State would not call for its deposit until the maturity of the bonds. I presume this is the reason that the order did not provide for certificates of deposit to be paid in one, two and three years to be issued to the State the same as other depositors.

"I have talked with Mr. Leonard and he says the reason that this agreement was made was because the bonds would mature in about a year and he thought that at their maturity the State would be able to pay the bonds and that therefore upon the payment of the bonds the bank could use the same money to pay the State. The Treasurer is now confronted with quite a different prob-

lem. There is no money to pay the bonds and provision has been made to issue revenue bonds, payable in ten years.

"It appears to me that under the agreement made with the bank the State would not be in a position to enforce collection of the amount due it for ten years, and if it could enforce collection at this time, the bank, not anticipating that there would be a default in the payment of the bonds, is not in a position to pay the State. I do not think it would be proper to accept the bonds in full settlement of the amount due the State because the money due the State was collected for various funds, and whatever is collected must be disbursed by these several funds. Of course, the cancellation of the bonds would liquidate that much of the debt due the road improvement district that issued the bonds, but we have no right to take money belonging to other funds to cancel a debt of these road districts. If the State took the bonds it would be its duty to dispose of them in order to apportion the amount to the several funds composing the deposit in your bank, and it is extremely doubtful what amount could be obtained for the bonds.

"I requested Mr. Leonard to make inquiry as to the market value of these bonds. He reported to me that he talked to the bond department of several banks and that these bonds were quoted from thirty-five to fifty cents on the dollar, but sometimes there is a difference between quotations and what can be actually received. They might not bring more than your offer of $4,000 in settlement, but in view of the fact that they are quoted as high as fifty cents on the dollar, I do not think it would be proper to accept less than $5,000 in settlement of the State's claim. I attach some little importance to the responsibility of the bank, however, we cannot tell what will be the condition of a bank ten years from now, but I think that this should be taken into consideration in the margin between what you offer and what we are willing to settle for. I do not think that we have a legal right to call on the bank at this time for settlement, in view of the agreement and in view of the State's default in its obligation.

"Considering the whole matter, I have reached the conclusion that if your bank will pay $5,000, that it would be best for the funds to which the money is due to accept it. If this is agreeable, the bank may pay the Treasurer $5,000 and I authorize the Treasurer to accept the amount in full compromise settlement under the authority given me by act 157, approved March 21, 1923.

"I am handing a copy of this letter to the Treasurer."

Acting on the advice of the Attorney General, appellee Leonard as State Treasurer accepted a draft of said bank drawn on the Peoples' Trust Company of Little Rock in the sum of $5,000 in full settlement of said claim. This draft for $5,000 was received by appellee Leonard on January 16, 1933, in full settlement of the State's deposit. The Peoples' Trust Company had on deposit on said date, and at all times thereafter until it closed its doors, a sum more than sufficient to pay said draft. "Due to confusion in the office of the State Treasurer, because the Legislature was in session, the defendant, Leonard, withheld said draft from the regular channels of business, and he failed to present same to the Peoples' Trust Company, a banking institution in Little Rock, Arkansas, the city in which the State Treasurer's office is and was located. Said draft was kept in Leonard's personal possession, without his having had same presented to Peoples' Trust Company for payment, for the period of forty-two days." Agreed statement of facts. On May 28, 1934, the State Treasury received from the Peoples' Trust Company a 30 per cent. dividend on its claim for $5,000, in the sum of $1,500, and it is unknown what additional amount will be paid thereon.

Appellant brought this action to recover judgment against appellees in the sum of $8,500 and interest, being the balance due on the total deposit in said bank, less the amount collected on said draft from the Peoples' Trust Company, on the ground that the settlement was improvident and that the Attorney General was not authorized to make same, and that appellee Leonard was negligent in the handling of the said $5,000 draft or check drawn on the Peoples' Trust Company. Appellees defended

on the ground that the letter of the Attorney General was authority for appellee Leonard to make the settlement and that he was protected by the advice of the Attorney General and was not guilty of any negligence in the handling of said draft. The trial court entered a judgment against both appellees in the sum of $3,500 and interest at 6 per cent. from Januay 17, 1933. From, this judgment comes this appeal on the ground that the court should have granted judgment for $5,000 additional.

For the reversal of the judgment, appellant makes some argument that appellee Leonard permitted a deposit of $37,500 in the Planters' Bank and Trust Company which was $7,500 in excess of the amount permitted by law, which limits the amount that may be deposited in any bank to one-half its capital and surplus, and that since said bank's capital and surplus was only $60,000, a deposit of only $30,000 was permitted as a maximum. It appears, however, that the deposit in the sum of $37,500 was permitted by the State Depository Board, and it is undisputed that the State has suffered no loss by reason of the fact that the deposit was in excess of that authorized by law. Only $10,000 was on deposit at the time said bank closed its doors, which was $20,000 under the limit provided by law, and that amount was secured by bonds of equal face value and were of a class permitted by law to be accepted by the Treasurer as security for deposits.

Some further argument is also made regarding the negligence of Leonard in the handling of the $5,000 draft in settlement of the State's deposit, but judgment was rendered against appellees for this amount less the dividend paid by the Peoples' Trust Company, and from this judgment there has been no cross-appeal.

Appellant contends that the Attorney General was not authorized to make the settlement with said bank under the provisions of act 157 of 1923, p. 129. The Attorney General thought he had such authority, for in the letter above quoted he said: ''Considering the whole matter, I have reached the conclusion that if your bank will pay $5,000, that it would be best for the funds to which the money is due to accept it. If this is agreeable, the bank

may pay the treasurer $5,000, and I authorize the treasurer to accept the amount in full compromise settlement under the authority given me by act 157, approved March 21, 1923.'' We do not stop to consider whether this act authorizes the Attorney General to advise the settlement which he did advise, for the reason that, whether this particular act confers authority, he did have such authority under the general statutes of the State, as well as under the common law. The Attorney General is the chief law officer of the State. He is required by statute, upon request, without fee or reward, to give his opinion to the Governor of the State, ''and to the heads of the several executive departments thereof, upon any constitutional, or any other legal question that may concern the official action of said officers.'' Section 4521, Crawford & Moses' Digest. Appellant says appellee Leonard made no request of the Attorney General for an opinion, but the letter itself, above quoted, shows that the Attorney General and Leonard had discussed this question, and we think it is inferable that his advice and counsel had been sought. It is true that the letter was not addressed to Leonard, but to the attorney for the bank, but a copy thereof was given to the treasurer.

We are furthermore of the opinion that the letter of the Attorney General affords a complete defense to appellees from this action in so far as it seeks to hold the compromise settlement void. We have recently had occasion to consider the effect of the advice of the Attorney General to State officials in two cases. *State* v. *Fidelity & Deposit Company of Maryland,* 187 Ark. 4, 58 S. W. (2d) 696, and *State ex rel. Attorney General* v. *Broadaway, ante* p. 634, 93 S. W. (2d) 1248. In the latter case we said: ''The reply of the Attorney General was in effect that the claims were legal obligations under act 153 of 1929, and as such payable out of any funds remaining in the appropriation. In delivering the voucher, and in approving it, the Commission acted upon the advice of the Attorney General, and its members are therefore protected against liability to the State under the rule laid down in *State* v. *Fidelity & Deposit Company of Maryland,* 187 Ark. 4, 58 S. W. (2d) 696. There being no liabil-

ity on the part of Blackwood and Williams, it follows that none attaches to the surety upon their official bonds."

If it were not so, State officials could not afford to accept the advice of the Attorney General. They would be compelled to act upon such advice at their peril. Such is not the law. The letter of the Attorney General authorizing appellee Leonard to make the settlement relieves him and the appellee surety company from any liability for having made this settlement.

The judgment is correct, and must be affirmed.