Argued December 14, 1939; affirmed January 16; petition for
rehearing stricken from the files February 14, 1940

STATE ex rel. MOLTZNER et al. *v.* MOTT

(97 P. (2d) 950)

In Banc.

*Jay S. Moltzner*, of Gold Beach, and *Zanley F. Galton*, of Portland (Goldstein & Galton, of Portland, on the brief), for appellant.

*Custer E. Ross*, of Salem, and *Barnett H. Goldstein*, of Portland, for respondents.

BELT, J.  This is an action to recover the amount of certain attorney's fees alleged to have been wrongfully and unlawfully paid from public funds to the defendant Barnett H. Goldstein for services rendered as special assistant attorney general in the prosecution of violations of the Blue Sky law. The action was commenced on January 6, 1938, and pertains to fees paid Goldstein for such services performed between and including June 18, 1931, and August 17, 1933. It is alleged that the defendant James W. Mott was the corporation commissioner of the State of Oregon from April, 1931, to March, 1933, and that the defendant Fidelity and Casualty Company was surety on his

official bond in the sum of $25,000. No service was had on Mr. Mott and he made no appearance herein. The other two defendants filed separate motions to strike the complaint from the files for the reason that it contained more than one cause of action not separately pleaded. The trial court allowed the motion to strike, and, upon refusal of the plaintiffs to plead further, dismissed the action. From the order of dismissal, the plaintiffs appeal.

The complaint, in so far as the same is material herein, alleges as follows:

"As such corporation commissioner, it was the duty of said James W. Mott, during his term of office, to enforce the various provisions of the Building and Loan Laws and the Blue Sky Law then in force and effect in the State of Oregon, and to cause the prosecution of any persons guilty of any violations of such provisions. The said James W. Mott, as such corporation commissioner, was advised, and had information causing him to believe that certain persons, residents of the State of Oregon, were guilty of the violation of certain provisions of the said Blue Sky Law, and/or the provisions of the Building and Loan Act, and in order to prosecute said persons whom he believed to be guilty, and in order to have said persons indicted by the grand juries of the various counties of the State of Oregon, in the month of April, 1931, he employed the defendant Barnett H. Goldstein as attorney for the corporation department, and said employment continued until March, 1933. In order to clothe the said Barnett H. Goldstein with the power and authority necessary to appear before the grand juries of the various counties of this state, so as to have said persons whom the said Mott believed to be guilty as aforesaid indicted, and in order to enable the said Goldstein to appear in court with the authority and power bestowed by law upon the various district attorneys of this state and upon the attorney general of this state, and to prosecute said

indicted persons, induced the then governor of this state, the Honorable Julius L. Meier, to request the attorney general of the State of Oregon, the Honorable I. H. Van Winkle, to appoint Barnett H. Goldstein as assistant attorney general, but without any annual or other salary, done simply for the purpose of clothing and endowing the said Goldstein with the necessary power and authority vested in the district attorneys of this state and in the attorney general of this state to appear before the grand juries of this state to prosecute such indicted persons, but done for and in behalf of the corporation commissioner of this state, the said James W. Mott. And pursuant to such employment as attorney for the corporation department, and/or the said corporation commissioner, and by virtue of the power and authority vested in him as assistant attorney general, the said Barnett H. Goldstein did present to various grand juries in the State of Oregon criminal matters and obtained indictments against various persons from said grand juries, and thereafter appeared in court and prosecuted such indicted persons; and thereafter, for such services rendered to such corporation commissioner, he presented his claims to the said James W. Mott as corporation commissioner, as set forth in Exhibit "B" hereto attached and made a part of this complaint by reference thereto. And thereupon, the said James W. Mott, as corporation commissioner, allowed said claims so presented for said legal services, and caused to be paid and paid to the said Goldstein for such legal services rendered by said Goldstein to and for and in behalf of said corporation commissioner, sums of money in the total amount of $17,103.99, by warrants of the secretary of state directed to the state treasurer, and supported by vouchers for claims duly and legally certified to by the said James W. Mott as corporation commissioner, as having been incurred pursuant to law by the corporation department or by him as corporation commissioner. A list of said warrants and the amounts paid thereunder is also set forth in Exhibit "B" hereto attached and by reference thereto made a part hereof.

## VI.

"That all the sums directed to be paid and so paid upon orders of the corporation commissioner, and so received by Barnett H. Goldstein are in excess of the amounts and for other and different purposes than is authorized by law. That all of said payments were made wrongfully and unlawfully and without any authority in law.

## VII.

"That the said James W. Mott violated and breached the terms and conditions of the duties of his office as corporation commissioner in that he employed the said Barnett H. Goldstein as attorney and caused him to be paid from funds of the corporation department. That said James W. Mott breached the terms and conditions of his bond of office in that he failed to faithfully perform the duties of said corporation commissioner and failed to pay over to his successor in office all monies received by him as said corporation commissioner and paid to the said Barnett H. Goldstein sums of money as hereinbefore set forth wrongfully and unlawfully and without any authority in law.

## VIII.

"That the sum of $5,000.00 is a reasonable sum to be allowed relators for the recovery of funds unlawfully expended."

██ Clearly, under the statute (§ 1-910, Oregon Code 1930), if the complaint contained more than one cause of action, not separately stated, it was proper to allow the motion. If it contained only one cause of action the motion was not well taken. However, we are not so much concerned as to whether more than one cause is alleged and not separately pleaded as we are with the question whether any cause of action is alleged. We are not unmindful that a motion to strike does not serve

the purpose of a demurrer in testing the sufficiency of a pleading: *The Victorian*, 24 Or. 121, 32 P. 1040, 41 Am. St. Rep. 838; *Harrison v. Birrell*, 58 Or. 410, 115 P. 141; *Hubbard v. Olsen-Roe Transfer Co.*, 110 Or. 618, 224 P. 636. If no cause of action was alleged it does not follow that the order of dismissal should be reversed even though the motion to strike was erroneously allowed. We think it is not in conformity with the proper administration of justice to reverse a case on a procedural question when it can be seen from the record that the judgment must ultimately result in favor of the defendant. Of course, if the pleading could be cured by amendment, a different question would be presented. In the instant case, however, no amendment could alter the record and the law applicable thereto.

■■ True, the defendants have not challenged the sufficiency of the complaint by demurrer, but even so such question may be raised for the first time on appeal: § 1-609, Oregon Code 1930. The court on its own motion, and without assignment of error, may take cognizance that a complaint fails to allege a cause of action: *Carver v. Jackson County*, 22 Or. 62, 29 P. 77; *Wyatt v. Henderson*, 31 Or. 48, 48 P. 790; 49 C. J., Pleading, 821.

■ Appellants invoke Art. VII, § 3c, of the Constitution of Oregon and ask that a judgment be rendered on the record of which they assert this court has judicial knowledge. Appellants assert in their brief: "In the interest of the State of Oregon, the elimination of further appeals on technicalities, the avoidance of a multiplicity of actions, and the swift administration of justice, this Court is justified at this time in determining the sufficiency in law of the complaint. If the defendants are liable as a matter of law, based on the official records, there is no further need of proceeding

except to remand for entry of judgment." In compliance with the above admonition, we will, in the interest of justice and to avoid needless litigation, endeavor to make a final disposition of this case. If from the record —including those things of which the court may take judicial notice—it can be determined that plaintiffs are entitled to judgment, it will so be entered; likewise, if the record discloses that defendants are entitled to prevail, it will so be adjudged.

The complaint, stripped of its legal conclusions and argumentation, may be thus summarized:

Honorable Julius L. Meier, then governor of Oregon, directed the attorney general, Honorable I. H. Van Winkle, to prosecute certain persons accused of having violated the Blue Sky law and the Building and Loan Act. In response to the direction of the governor, the attorney general appointed the defendant Barnett H. Goldstein as an assistant attorney general to carry on the prosecutions above mentioned "without any annual or other salary." After such appointment Goldstein rendered services as such officer for and on behalf of the corporation commissioner in the prosecution of persons charged as aforesaid. Claims for such services were filed by Goldstein with the secretary of state, and warrants on the general fund (charged to the corporation commission account) were issued in his favor and paid by the state treasurer.

■■ The governor had authority, under § 67-507, Oregon Code 1930, to direct the attorney general to appear in court in the various counties and prosecute persons charged with crime. The appointment of Goldstein by the attorney general was authorized by § 67-510, Oregon Code 1930. The reasons alleged by plaintiffs for making the appointment are wholly immaterial. It is

sufficient to say that the appointment was legal. It is alleged that the corporation commissioner "allowed said claims so presented for legal services, and caused to be paid and paid to the said Goldstein for such legal services." Such charge, however, avails nothing in view of the specific allegation that Goldstein was paid by warrants issued by the secretary of state on the general fund. It is the duty of the secretary of state under the Constitution of Oregon (Art. VI, § 2) and the statutory law of this state (§ 67-212, Oregon Code 1930) to audit claims presented against the state: *Boyd v. Dunbar*, 44 Or. 380, 75 P. 695. If such officer, after an examination of the claim, deems it valid, a warrant is issued in payment thereof. We conclude from the pleading that Mott did not pay the claim of Goldstein or cause it to be paid. Neither did Mott have any authority or control over the secretary of state in auditing the claim of Goldstein. If there is no basis for liability against Mott, there is none against the surety on his official bond. Furthermore, if the secretary of state had a legal right to issue the warrants in question, we think Goldstein had a legal right to cash them.

■ In the absence of specific allegations of fact showing in what manner the funds were wrongfully diverted, we think the charge in paragraph six of the complaint that the payments to Goldstein "were made wrongfully and unlawfully and without any authority in law" amounts only to a conclusion of law.

■ Ordinarily, an assistant to the attorney general is paid from funds appropriated for such office, but when Goldstein was appointed sufficient funds were not available to pay him. He was therefore paid from funds of the corporation commission. It is the legal duty of

the corporation commissioner to administer and enforce laws relative to savings and loan associations and corporations. While the corporation commissioner did not have authority to employ private attorneys to conduct such prosecutions (*Gibson v. Kay*, 68 Or. 589, 137 P. 864), we think he had the legal right at least to cooperate with the attorney general to the extent of approving claims to be paid from the corporation commission funds for services rendered. After all, it remained for the secretary of state to audit the claims.

While it is a matter of defense, we think, under the state of the record, it is proper to take judicial notice of the opinion of the attorney general to the secretary of state that the claim of Goldstein against the state was valid. In this opinion, the secretary of state was advised that he had authority to issue the warrants. (Opinions of Attorney General, 1930-1932, p. 614.) While the secretary of state was not bound to follow such opinion, he had the right to do so and is protected while acting in good faith even though it is assumed the same was erroneous; although we do not so decide: *State ex rel. v. F. & D. Co.*, 187 Ark. 4, 58 S. W. (2d) 696; *State ex rel. v. Leonard*, 192 Ark. 834, 95 S. W. (2d) 86. If the law were otherwise few responsible administrative officers would care to assume the hazards of rendering close decisions in public affairs. Officers acting in good faith have a right to rely on the opinion of the attorney general, as he is the officer designated by law to render such service for their guidance and protection. What has been said has no application, however, where the officer to whom the opinion is given participates in the fruits of a wrongful or unlawful act. In such cases the advice of the attorney general is no defense.

■ Giving to the complaint every reasonable intendment which it is entitled to in the absence of a demurrer, we are of the opinion it does not state a cause of action.

It follows that the order dismissing the action is affirmed.