IVAN CANNON, DARYL B. GARNER, AND FORREST PURDY, APPELLANTS, *v.* WILLIAM L. TAYLOR, C. R. CLELAND, AND JOHN MYERS, RESPONDENTS.

No. 6367

February 23, 1972                    493 P.2d 1313

[See Cannon v. Taylor, 87 Nev. 285, 486 P.2d 493 (1971)]

*L. Earl Hawley* and *Edward G. Marshall,* of Las Vegas, for Appellants.

*Carl E. Lovell, Jr.,* of North Las Vegas, for Respondents.

## OPINION ON REHEARING

*Per Curiam:*

When this appeal was briefed and argued, counsel did not mention, thus this court was unaware, that the state's Attorney General had, on June 14, 1967, issued his Opinion No. 422, discussing the enactment here concerned, and concluding:

"It is therefore the opinion of this office that:

"1.   Chapters 400 and 404 of the 1967 Statutes of Nevada, repealed and wiped out the salaries of named city officials in effect as of the date of the passage and approval of said acts, to-wit, April 15, 1967.

"2.   The acts established the procedure for the setting of new salaries by the City Council of North Las Vegas and the City Commissioners of Las Vegas, and such salaries once established were retroactive to April 15, 1967.

"3. That the provision against diminishing or increasing salaries of the officials named in the acts designated above referred to the salaries established under the new bills, and did not refer to salaries previously paid the named city officials." Op. Att'y Gen. No. 422 (June 14, 1967).

While the Attorney General's opinions are not binding on us, and the members of the court adhere to their respective views concerning the interpretation of Chapter 400 of the 1967 Statutes, all members of the court agree that the issuance of the Attorney General's opinion, and the council members' reliance thereon, must alter the result we originally reached. See: Cannon v. Taylor, 87 Nev. 285, 486 P.2d 493 (1971).

One of the duties of the Attorney General is to issue written opinions upon questions of law to guide public officials, which in this case he properly did at the request of the City Attorney of Las Vegas. NRS 228.150. It appears clear the Attorney General intended also to advise the City Attorney of North Las Vegas, whose City Council faced the same problem; for his Opinion covered both cities, reaching the same conclusion as to each. We must assume that the City Attorney of North Las Vegas relied on this advice at least to some degree, when he permitted respondents to believe accepting a salary increase had been and would be proper.

However indirectly conveyed, the city fathers were entitled to rely on the Attorney General's advice, to-wit: that they must enact a new salary structure; that they might properly increase their salaries when doing so; that such salaries and any increases in them were to be retroactive to April 15, 1967; and that state law did not preclude this, but indeed required action by them if they were legally to be paid at all. As our prior opinion reflects, a majority of this court believe the Attorney General was incorrect, but as said in State v. Fidelity & Deposit Co. of Maryland, 58 S.W.2d 696 (Ark. 1933), which involved mistaken payment of "living expenses" approved by the state's Attorney General: "It does not follow, however, that the commissioners are liable for the erroneous payments." Id., at 698.

A case of this kind must stand on its own facts, but as a general proposition where government officials are entitled to rely on opinions of the state's Attorney General, and do rely

in good faith, they are not responsible in damages to the governmental body they serve if the Attorney General is mistaken. State v. Fidelity & Deposit Co. of Maryland, supra; State v. Broadaway, 93 S.W.2d 1248 (Ark. 1936); Standard Surety & Casualty Co. v. State of Oklahoma, 145 F.2d 605 (10th Cir. 1944); cf. State v. Meier, 115 N.W.2d 574 (N.D. 1962).

"Were the rule otherwise, few persons of responsibility would be found willing to serve the public in that large capacity of offices, which requires a sacrifice of time and perhaps money, but affords neither honor nor profit to the incumbent." State v. Fidelity & Deposit Co. of Maryland, supra, at 699.

■■■■■■

We believe the facts of this case warrant application of the rule just enunciated. If the city fathers accepted some increased salary payments before issuance of the Attorney General's opinion, they could not have been many, nor is this material; for that opinion told them "such salaries once established were retroactive to April 15, 1967," and therefore theirs to keep and to utilize in their personal and civic activities.

■■■■■■■

As appellants contend, our established practice does not allow a litigant to raise new legal points for the first time on rehearing. Cf. In Re Lorring, 75 Nev. 330, 340 P.2d 589 (1959); rehearing denied, 75 Nev. 334, 349 P.2d 156 (1960). Here, however, we consider that respondents' counsel has merely directed our attention to an incontrovertible fact, verifiable from records in the building where we sit. Our precedents do not require us to ignore it, in favor of appellants, who lost in the court below. Were we to accept their contention that such a fact must be shown by the record, the result reached by our prior opinion would still be incorrect. A gap in the record, a factual question, would stand revealed, on which respondents would be entitled to a trial. Since there is no genuine issue as to this material fact, there is no need of a trial to resolve it. NRCP 56.

The respective members of the court adhere to their views, exactly as stated in our prior opinion. That opinion is withdrawn only insofar as it ordered reversal of the judgment entered by the lower court. The summary judgment in favor of respondents must be, and hereby is, affirmed in all respects.

COMPTON, D. J., concurring:

I concur in the result reached by the Court today but for different reasons.

In my view, the reasoning as set forth in the Court's prior decision is based on a sound analysis of the facts, and the rules of law therein enunciated properly interpret the legislature's statutory intent. See: Cannon v. Taylor, 87 Nev. 285, 486 P.2d 493 (1971).

The majority places undue weight upon facts brought before this Court for the first time by respondents at their requested rehearing. The fact that respondents *may* have relied on oral representations by the Attorney General's office prior to the publication of its opinion is not sufficient to overturn this Court's earlier determination. It should be pointed out that in respondents' points and authorities on rehearing, notably submitted by the City Attorney of North Las Vegas as attorney for respondents, a chronological breakdown of facts is set out as an aid to the Court. This chronology indicates that respondents raised their salary from its former level 14 days following the adoption of Senate Bills 450 and 451, while the Attorney General's Opinion No. 422 was not issued until June 14, 1967, some sixty days following adoption, and 46 days after the respondents had fixed a new salary level. To me, reliance on these facts is tenuous, at best.

However, I am in agreement with the rule as stated by the majority that "a case of this kind must stand on its own facts." As a general proposition where government officials are entitled to rely on opinions of the state's Attorney General, and do rely in good faith, they are not responsible in damages to the governmental body they serve if the Attorney General is mistaken. Although this is not a case wherein talk of damages is appropriate; rather it is one for the repayment of improper compensation.

In my judgment, if there is a sound basis for overturning our earlier determination, it is respondents' argument on rehearing that appellants are estopped by the doctrine of laches from asserting a taxpayer's claim against respondents.

The fact is that on April 29, 1967, respondents established salary levels above those set at the time of their election to office. Subsequently on May 13, 1969, and after a period of almost two years, appellants filed their complaint. And as was noted by the Court in its prior decision, "this class action suit was instituted by the appellants, as taxpayers, on the day before the expiration of the respondents' term of office."

Expenditures of municipal funds, as well as other actions taken by city councils, are regularly published in local newspapers. In fact, by law, proposed and final budgets compiled by city councils must be published. NRS 354. Knowledge or

notice on the part of appellants of the alleged wrong is an important factor in determining whether delay in bringing a taxpayers' action constitutes laches. Johnson v. Black, 49 S.E. 633, insufficient notice; Torgeson v. Connelly, 348 P.2d 63.

And delay in bringing a taxpayers' action, where the complainants have express or implied knowledge or notice of the situation, may constitute such laches as to bar relief. Conners v. Lowell, 140 N.E. 742; See generally 27 Am.Jur.2d 710, Equity § 167.

After reviewing pertinent sections of the record of the case at bar, I can discern no valid reason why appellants delayed filing suit for nearly two years. Appellants, as reasonably diligent taxpayers, are charged with knowledge of public notices required to be published for their benefit. Of course, a delay however long, by itself, does not constitute laches. There must also be prejudice to the respondents resulting therefrom. As the majority has indicated, the respondents acted in good faith, and to require them, at this late date, to return funds which they had in good faith believed they had earned (and at which rates their successors in office are paid) is not justified under the circumstances.

The record reflects a void as to when appellants discovered respondents had established an improper salary level, however, the requirement of "reasonable diligence" on the part of appellants cannot be disregarded. Thus, in my judgment, a delay of this magnitude under the facts and circumstances as this record presents, was fatal to appellants.

I would affirm the trial court's order granting summary judgment.