Argued August 23, affirmed September 30, reconsideration denied
October 30, petition for review allowed December 27, 1974

STEPHENS, *Appellant, v.* DEPARTMENT OF
STATE POLICE ET AL (No. 83093), *Respondents.*

526 P2d 1043

S. *David Eves,* Corvallis, argued the cause for appellant. On the brief were Ringo, Walton, McClain & Eves, Corvallis.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

LANGTRY, J.

This appeal is from a judgment of the circuit court in a writ of review proceeding under ORS 34.010, et seq. The proceeding from which the writ was taken was a disciplinary matter heard by a trial board of the Oregon State Police pursuant to the proceedings provided for in ORS ch 181. The plaintiff was a trooper

in the Oregon State Police who applied, as a United States Army reserve officer, to take and was accepted for a nine-week military training course in the United States Army Infantry School at Fort Benning, Georgia. He had been refused permission for the leave of absence by his commanding police officer and had been given written orders to report for regular duty on the morning on which he had left. He did not report for duty on that morning. The training course was extended to a total of 12 weeks, after which he reported for police duty. This led to the disciplinary proceeding which resulted in his removal from the police force. The trial board of police officers found that he was guilty of being absent without authorization and of insubordination by reason of his violation of a direct order to report for duty. These specifications were stated to be in violation of Article VIII, Section 1; Article II, Section 9(w) and Article IV, Section 6 of the Department of State Police Manual (1968). The circuit court after hearing affirmed the action of the superintendent in removing plaintiff pursuant to the findings of the trial board.

Our review is pursuant to ORS 34.040, which provides in pertinent part that a writ shall be "allowed" where the tribunal, in this case the trial board of officers, "(3) [m]ade a finding or order not supported by reliable, probative and substantial evidence, or (4) [i]mproperly construed the applicable law." ORS 34.100 provides that on appeal we may "affirm, modify, reverse or annul the decision."

The first finding of the trial board was that plaintiff was "wilfully absent from duty * * * without the consent of his superior officers, in violation of Article VIII, Section 1, Department of State Police Manual."

In arriving at this finding the trial board relied upon a 1967 opinion of the Attorney General of Oregon which held that ORS 408.240, giving public employes a right to military leave of absence without pay for periods of active service, does not apply to periods of duty over 15 days at a time which are exclusively for training. 33 Op Att'y Gen 319 (Or 1967). The opinion is quite involved but it concludes that ORS 408.240 does not apply to military training leaves of absence like that here in question. The statute (ORS 408.240) states:

"(1) Whenever any public officer or employe leaves a position after June 24, 1950, whether voluntarily or involuntarily, in order to perform military duty, such office or position shall not become vacant, nor shall the officer or employe be subject to removal as a consequence thereof * * *."

ORS 408.210 defines military duty as

"* * * *training* and service *performed by* an inductee, enlistee or *reservist* or any entrant into a temporary component of the Armed Forces of the United States, * * * but does not include active duty training as a reservist in the Armed Forces of the United States or as a member of the National Guard of the United States where the call is for a period of 15 days or less." (Emphasis supplied.)

Plaintiff testified that he had contemplated resigning from the state police in order to take the training course. But he consulted legal counsel before doing so, and we can only conclude that counsel advised him that the plain wording of these statutes meant that he was entitled to the leave without sacrificing his position.

■ (1). The wording of these statutes would seem to support plaintiff's position. Military leave is granted by the statute automatically. There is no discretion

on the part of any department or official to grant or deny the leave. The statute on its face is unconditional.

■ Defendants argue that the granting of military leave under ORS 408.240 is mandatory only for periods of military training combined with service. They interpret the statute as saying that military leave for purposes of training only is a matter of departmental policy—in this case left to the discretion of the police department. They base this conclusion on the Attorney General's opinion interpreting the statutes in question. We must make an independent determination of the meaning of the statutes.

The Attorney General's opinion notes that, when the legislature was considering ORS 408.210 and 408.240 in 1951, it appeared to have had before it the "Model State Law Relating to Military Leave" contained in "Suggested State Legislation—Program for 1951—Developed by the Council of State Governments." The definition of military duty contained in ORS 408.210 is taken almost verbatim from the "Suggested State Legislation" except for one important difference. The original definition contained the qualification, " '* * * Provided, That "military duty" shall not include active duty training as a reservist in the armed forces of the United States or as a member of the National Guard of the United States *where the call is for training only.*' " (Emphasis supplied.) The Attorney General said this provision was persuasive to demonstrate that the definition of military duty in its original form, and as enacted, was never meant to include periods of training only. Perhaps this was so, but the legislature, while using the rest of the definition, chose to eliminate the emphasized words, substituting other words about 15-days-or-less leaves of

absence from the final draft of the statute. If the elimination of the "training only" limitation from the definition of military duty as enacted is significant at all, it would seem to demonstrate that the legislature meant to broaden the definition to include periods for training only.

ORS 408.210 seems to use the terms "training *and* service" and "training *or* service" interchangeably, implying that there is no intent to distinguish between the two terms.

> "* * * [T]he court is not authorized to re-write a statute or to ignore the plain meaning of unambiguous words * * *.
>
> " '* * * The court's province, after all, is to ascertain what the legislature intended from *the language used,* with such aid as may be found in the rules of interpretation and legitimate extrinsic sources; to construe statutes, not to enact them; to declare what the legislature has done, not what it should have. * * *' * * *" *Lane County v. Heintz Const. Co. et al,* 228 Or 152, 157, 364 P2d 627 (1961).

We conclude that under the definition of "military duty" as contained in ORS 408.210 there is no distinction between periods of service and periods of training only.

The state argues that it would be an "absurd result which would follow from construing ORS 408.240 to permit all state employes from taking unlimited leave for voluntary military training * * *." We can see that it might well be an unsatisfactory result. We can hardly agree that it would be absurd, however. In fact, the record contains an exhibit which is an official statement from the Governor of Oregon urging that such leaves of absence be granted without loss of

vacation time. If the results from this statutory language are unsatisfactory, and not what the legislature intended, it may readily remedy the situation.

(2). Trooper Stephens disobeyed a direct order of his superior to report to work. Defendants argue that because of this action Stephens' dismissal for insubordination is justified. Stephens had had a similar request denied on a previous occasion, and presumably knew of the interpretation of the law that was made in the Attorney General's opinion. He testified that he had contemplated resignation from the state police in order to take training in the Army.

ORS 181.290 gives the Superintendent of State Police power to remove any police officer for "insubordination." A search reveals no Oregon cases dealing with the meaning of this term as used in the statute, nor does it turn up any Oregon cases dealing with permissible grounds for the removal of police officers. Cases from other jurisdictions will give some idea of what other courts allow to come under the heading of "insubordination."

█ It is axiomatic that continued public employment cannot be conditioned on the abrogation of a constitutional right. *See Slochower v. Board of Education,* 350 US 551, 76 S Ct 637, 100 L Ed 692 (1956), where a teacher had been fired for his exercise of Fifth Amendment rights. However, public employment may be conditional on the giving up of some privileges which other citizens possess. *Slocum v. Fire and Police Com. of Peoria,* 8 Ill App 3d 465, 290 NE2d 28 (1972).

In California "insubordination" can be rightfully predicated only upon refusal to obey some order which a superior officer is entitled to give and is entitled to

have obeyed. *Parrish v. Civil Service Commission,* 66 Cal 2d 260, 57 Cal Rptr 623, 425 P2d 223 (1967); *Sheehan v. Board of Police Commrs.,* 197 Cal 70, 239 P 844 (1925); *Garvin v. Chambers,* 195 Cal 212, 232 P 696 (1924); *Forstner v. City etc. of San Francisco,* 243 Cal App 2d 625, 52 Cal Rptr 621 (1966).

Courts emphasize that an order which infringes on constitutional rights is void in this context and insubordination cannot be predicated thereon. Cf. *Parrish v. Civil Service Commission,* supra; and *Roller v. Stoecklen,* 75 Ohio L Abs 453, 143 NE2d 181 (CP Montgomery County 1957).

However, in the latter case, where a constitutional right was infringed by the order, the court said:

> "Where a simple doubt exists as to the reasonableness or legality of an order of a superior and time is not made of the essence of the order * * * some other method might be selected * * * for its determination * * *." 75 Ohio L Abs at 457.

We have already noted that there was ample time for Stephens to have anticipated the order and to have chosen another method of determining the matter.

ORS 180.060(2) provides that the Attorney General shall give opinions such as was given here. ORS 180.220 provides that the Attorney General shall be counsel for heads of departments and that they cannot have other counsel. In *State ex rel. v. Mott,* 163 Or 631, 640, 97 P2d 950 (1940), speaking of reliance upon opinions of the Attorney General, the court said:

> "* * * While the secretary of state was not bound to follow such opinion, he had the right to do so and is protected while acting in good faith even though it is assumed the same was erroneous * * *. If the law were otherwise few responsible admini-

strative officers would care to assume the hazards of rendering close decisions in public affairs. Officers acting in good faith have a right to rely on the opinion of the attorney general, as he is the officer designated by law to render such service * * * ."

■■ While the general rule appears to be that an officer is not insubordinate for refusing to obey an order that is not legally valid, under the peculiar facts of this case we find an exception to exist. When the officer deliberately chose the method he did to test the law, it was at the risk of losing his position.

Affirmed.

FOLEY, J., dissenting.

I agree with the conclusion of the majority that the 1967 opinion of the Attorney General was incorrect and the majority statement that

"* * * [m]ilitary leave is granted by the statute automatically. There is no discretion on the part of any department or official to grant or deny the leave. The statute on its face is unconditional."

The superintendent's order that the trooper report for police duty, in the face of the statute, was thus illegal. Upon that basis I do not agree with the conclusion of the majority that an officer must obey an illegal order or be discharged as insubordinate unless he chooses a method other than refusal to obey to test the legality of the order.

While I am in sympathy with the state's concern that the statutes involved pose problems for state employers, I agree with the majority's statement that:

"* * * If the results * * * are unsatisfactory, and not what the legislature intended, it may readily remedy the situation."

As the majority points out, our review includes whether the trial board of officers " '* * * [i]mproperly construed the applicable law.' " The superintendent of the state police relied upon an Attorney General's opinion, the appellant upon private legal counsel. The Attorney General's opinion was incorrect and obviously the opinion of the trooper's attorney interpreting the statute in question was correct. I, see no reason why the trooper was not as entitled, at his risk, to rely upon his counsel as was the superintendent to rely upon the opinion of the Attorney General. There is no claim that the trooper failed to give his superiors reasonable notice of his military orders.

The wording of the statute is clear:

"(1) Whenever any * * * employe leaves a position * * * whether *voluntarily* or *involuntarily,* in order to perform military duty, such office or position shall not become vacant, *nor shall the * * * employe be subject to removal as a consequence thereof. * * **"* (Emphasis supplied.) ORS 408.240(1).

The effect of the action of the majority is to rewrite the statute to ignore the word "voluntary" in it and to eliminate the words "nor shall the * * * employe be subject to removal as a consequence thereof." I do not think this court should assume such broad legislative powers.

I would reverse the judgment of the circuit court. I dissent.