LUCY M. BASHAW, E. R. BASHAW, ROBERTSON
E. COLLINS, FRANK A. HOPEWELL, ELINOR A.
HOPEWELL, JOYCE WITHAM, RODNEY A.
WITHAM, FRANK R. ALLEY, EDWARD H.
COLLINS and ROBERT W. HAGUE

*v.*

BEAR CREEK VALLEY SANITARY AUTHORITY;
DEPARTMENT OF REVENUE, *Intervenor.*

Steven A. Zamsky, Giacomini, Jones & Zamsky, Klamath Falls, represented plaintiffs.

Ted E. Barbera, Assistant Attorney General, Salem, represented intervenor.

Manville M. Heisel, Medford, represented defendant.

Decision for plaintiffs rendered October 10, 1977.

CARLISLE B. ROBERTS, Judge.

The plaintiffs are ten interested taxpayers who have appealed from certain actions of the defendant pursuant to ORS 294.485(2). The defendant, Bear Creek Valley Sanitary Authority, was and is a municipal corporation which is required to comply with the provisions of ORS 294.305 to 294.520 (Oregon's "Local Budget Law"). The intervenor, Department of Revenue, State of Oregon, is the state agency charged by ORS 294.495 et seq. to supervise the budget making of various municipal corporations, including the defendant, to require compliance with the provisions of ORS 294.305 to 294.520.

Following the procedures of the Local Budget Law, the defendant adopted a budget, made appropriations and declared tax levies and, on July 6, 1977, filed notice with the Jackson County Assessor of the defendant's levies for fiscal year 1977-1978.

The facts relating to the plaintiffs' first cause of suit are that the published budget discloses that defendant's Fund 05, called the "Debt Service Fund," had total resources for the budget year (other than anticipated taxes to be levied) in the amount of $2,128,228 (including cash in the amount of $2,014,591), that the budget called for a total expenditure from the Debt Service Fund for servicing General Obligation Bonds issued February 1, 1970, in the amount of $565,705 for the fiscal year 1977-1978, that the budget reveals an unappropriated ending fund balance in the sum of $1,931,067, and yet the taxing body ordered a tax levy in the amount of $368,544.

Defendant's answer admits that as of July 1, 1977, the actual beginning fund balance for Fund 05 (Debt

Service Fund) was $2,078,026.09, which included the following: an unexpended appropriation from the Federal Water Quality Administration Grant No. WPC-ORE-279, granted by federal authorities in connection with the Bear Creek Sewer Interceptor System (referred to by counsel as "BCI bonds"), in the sum of $2,065,208.98; the unexpended balance of South Bear Creek Sanitary District Bond Retirement Reserve Fund, $7,346.01; and the 1976-1977 ending fund balance of the City of Talent's General Obligation Bonds Debt Service (which had been taken over by the defendant) in the sum of $5,471.10, a total of $2,078,026.09.

The evidence shows that the Board of Directors of the defendant had adopted and maintained a fiscal policy with respect to the Federal Water Quality Administration Grant WPC-ORE-279, implemented by its resolution No. 71-4, to provide for the promotion of efficiency and economy in expenditure of public funds, specifically (Def Ans 10):

"(a) To combine a tax levy with an appropriation from said fund to achieve a relatively constant rate of levy, and

"(b) To conserve a sufficient amount of grant funds from said fund to call the General Obligation Bond Issue of the Authority, dated February 10 [1?], 1970, at the earliest practicable date on or after February 1, 1980."

Plaintiffs' second cause of suit related to defendant's budget Fund 06-Series S-1 (Bancroft Bond Redemption Fund) in which the total resources (other than anticipated taxes) were listed as $216,360 (including cash on hand of $130,834), as to which payments of anticipated principal and interest during the fiscal year were expected to be $38,816 and for which a tax levy was ordered in the sum of $8,000 (unnecessarily, in the plaintiffs' belief).

Defendant pleaded and proved that on July 17, 1974, it had issued $441,016 in General Obligation Improvement Bonds dated July 15, 1974, Series S-1, to

mature over a 20-year period, with rights of redemption on July 15, 1984, or any interest date thereafter. In this type of bond, property owners who are subject to liens on account of the bonds have a right to prepay their individual balances at any time and discharge the lien. Such sums, when received by the defendant, are deposited in the Bancroft Bond Redemption Fund 06 (Series S-1). Cash on hand as shown by the budget, in the sum of $170,834, represented prepaid sums and the interest earned thereon.

Defendant further testified that the bonds, Series S-1, were sold in an amount equal to the appropriations for improvements sought by the property owners. At the time that the improvements were initiated, interest chargeable to the property owners was limited by law to 6 percent per annum. The bonds sold at a net effective interest rate of 6.9567 percent. Deposits of moneys received by the defendant on account of Series S-1 bonds are invested by the Jackson County Treasurer in accordance with law and the interest rate received by him has been somewhat less than 6 percent.

Defendant's testimony showed that the Board of Directors of the defendant had adopted a fiscal policy in respect to said Fund 06 (Series S-1) to levy a relatively small and uniform annual tax for the estimated deficit in the fund resulting from the interest differentials, rather than to tax for the entire differential in one to three tax years at a substantially greater rate of levy (which defendant's Board thought would be necessary some years hence if its policy was not carried out).

The gist of the plaintiffs' complaint is that the defendant's levy of taxes for the tax year 1977-1978 in the instances cited demanded the imposition of some taxes with respect to specific activities as to which sufficient funds were already available to meet the liability of the said activities for the tax year. (Plaintiffs' counsel, in his closing argument, conceded that

the facts had shown that the taxes levied on behalf of the City of Talent were proper and that levy is approved by the court.)

Defendant's counsel orally stated that the question of chief interest to the defendant respecting its tax levy: Does the municipal corporation have power "to manage with a long view" or only one year at a time?

■■■ As stated in *Napier v. Lincoln Co. School Dist.,* 4 OTR 221, 228-229 (1970):

> "ORS 294.361 requires each municipal corporation to estimate in detail its 'budget resources' for the ensuing year by funds and sources. 'Budget resources' means resources to which recourse can be had to meet obligations and expenditures during the fiscal year covered by the budget. ORS 294.311(6). ORS 294.361(2) further expands upon the definition of budget resources, showing a legislative intent to include revenues from any and all sources of whatsoever kind or character so far as possible. ORS 294.381 makes clear the legislative intent that the municipal corporation shall levy taxes only to the extent necessary to balance the budget requirements after taking into account all other budget resources."

The intent of the Local Budget Law, as found by the court, is also reflected in other pertinent acts. Although ORS 450.895 (relating to sanitary authorities) requires a fiscal policy looking toward the payment of sanitary authority general obligation bonds in installments "as nearly equal as practicable during the years of payment," ORS 450.920 particularly provides that "the proceeds of the sale of the bonds may be used for payment of the principal and interest of such bonds," from which the court infers an intent to support the policy of avoidance of tax levies when other resources are available.

Again, ORS 223.245, in the Bancroft Bonding Act, sets up a policy of equal payments, "as nearly as practicable," but specifies that interest on the bonds and amounts of installments of maturing bonds shall

"be deducted in the [annual] budget," under a conservative estimate, to offset the need for a levy of taxes pro tanto.

■ The court concludes that the levy of any taxes by the defendant for the tax year 1977-1978 was void to the extent that other available resources made such levy unnecessary.

That the Board of Directors of the defendant have the necessity and duty of adopting and maintaining a fiscal policy is not controverted. (The question of the wisdom of such policies is not before the court in this case.) However, those parts of Resolution No. 71-4 relating to Fund 05 and those parts of the fiscal policy adopted in respect to Fund 06 (Series S-1) which resulted in the levying of taxes for Fund 05 (Debt Service Fund) and Fund 06 (General Obligation Bonds Series S-1) are void because they are in conflict with a legislative policy necessarily inferred from the statutes.

This does not preclude the segregation of accounts in the County Treasurer's office for unused portions of the funds relating to the bonds which have been received and were not used for the levy of 1977-1978. This is provided for in ORS chapters 450 and 223.

The court agrees with defendant's able counsel that ORS 294.371 (relating to unappropriated ending fund balances) appears not to visualize the situation portrayed by defendant, wherein the district's firm purpose of exposing to the taxpayers all aspects of defendant's fiscal situation was revealed, and that no line in the Department of Revenue's required budget forms appears suitable for indicating that the bond proceeds are to be carried forward more than the "ensuing year." (ORS 294.311(10).) Advice on that problem should first be sought by defendant from the intervenor, pursuant to ORS 294.495.

The defendant's annual budget and tax levy are found to be void only in the respects described above.

The defendant and the Assessor and Tax Collector of Jackson County shall take the necessary steps to correct the defendant's 1977-1978 levy as required herein and to extend the corrected levy upon the rolls for the 1977-1978 tax year.

Each party shall bear its own costs.