Argued and submitted October 9, 1978, affirmed July 12, 1979

BASHAW et al, *Respondents,*
DEPARTMENT OF REVENUE, *Intervenor,*
*v.*
BEAR CREEK VALLEY
SANITARY AUTHORITY, *Appellant.*
(TC 1175, SC 25547)
597 P2d 822

Manville M. Heisel, Medford, argued the cause and filed a brief for appellant.

Steven A. Zamsky of Giacomini, Jones & Zamsky, Klamath Falls, argued the cause and filed a brief for respondents.

Ira W. Jones, Senior Assistant Attorney General, Salem, argued the cause for intervenor. With him on the brief was James A. Redden, Attorney General.

LINDE, J.

**LINDE, J.**

The question to be decided is whether defendant sanitary authority must use federal grant money and other unused capital to make payments on its bond issues before it may exercise its taxing power for this purpose.

Plaintiffs, ten owners of property taxable by the Bear Creek Valley Sanitary Authority, appealed to the Oregon Tax Court pursuant to ORS 294.485 for a declaration that a proposed tax levy for fiscal year 1977-1978 of the sanitary authority contravened the Local Budget Law, ORS 294.305 – 294.520. The Department of Revenue intervened on the side of the taxpayers.[1] The tax court agreed with plaintiffs and the department that "the levy of any taxes by the defendant for the tax year 1977-1978 was void to the extent that other available [budget] resources made such levy unnecessary," 7 OTR 196, 201 (1977), and defendant appealed. We affirm.

Bear Creek Valley Sanitary Authority is organized under ORS chapter 450. Its fiscal powers are governed by the following provisions. The authority may finance the cost of its installations by sewer connection charges, by sewer service charges, or by general obligation bonds secured by annual taxes on property in the authority's area. ORS 450.855(3). Subsection (4) of ORS 450.855 authorizes the authority's board to "[d]etermine the method of financing the construction

---

[1] ORS 294.490 – 294.565 assigns the Department of Revenue certain functions under the Local Budget Law. Drawing a somewhat delicate line, ORS 294.495 directs the department to "construe" the law upon request and to "instruct" responsible officers as to their duties and empowers it to make rules and regulations to carry out the purposes of the law, while ORS 294.490 cautions the department not to "interfere in any way with the fiscal policy of a municipal corporation as established by its governing body or budget committee."

The department does not appear to have issued regulations covering the policy adopted by the sanitary authority that is at issue here, nor does it appear that plaintiffs obtained a declaratory ruling from the department pursuant to ORS 294.500 or an order under ORS 294.510 before appealing to the tax court, but no issue is made of this.

of the proposed installations and the amount and type of bonds" to be used. The authority may annually levy a tax on all property within its area to pay its expenses and installments on general obligation bonds that are not chargeable to any particular area, and it may levy an additional tax on property in a particular area when sewer charges and assessments are not sufficient to pay the cost of bonds chargeable to that area. ORS 450.885. That section further provides:

"(4) The board shall prepare a budget in the form, manner and time prescribed in the Local Budget Law and in accordance therewith fix the amount of money to be raised by taxation for carrying out its functions and activities and for the payment of the principal and interest of outstanding indebtedness of the authority which will become due during the year. The board shall determine the amount of taxes to be raised from the entire authority and the additional amount to be raised from each of the areas within the authority which are directly benefited by particular installations."

The present dispute concerns tax levies intended to raise revenues for two funds from which the sanitary authority pays installments of principal and interest on two issues of general obligation bonds. The facts are set out in the tax court opinion and need only be summarized here.

In February, 1970, the sanitary authority issued bonds in the amount of $4,860,000 for construction of a sewer interceptor system. These bonds, described as the Bear Creek Interceptor or BCI bonds, mature serially over 15 years and are callable after 10 years. In January, 1971, upon receiving a grant from the Federal Water Quality Administration, defendant's board of directors adopted a resolution which recited that the board desired to apply the grant funds to payment in whole or in part of the principal and interest falling due on the BCI bonds and which placed the sums received or to be received under the grant

into a reserve fund for this purpose.[2] This fund, by resolutions passed in 1973 and 1975, became "Debt Service Fund — Fund 05."

Payments were in fact made from this fund to meet the installments due on the bonds. However, the board also deemed it advantageous to retire the bonds early, which would become possible in fiscal 1980-1981, and to add the necessary sums to the grant funds by a steady rate of taxation in preference to high tax levies during the final four years of the original 15-year period of the bond issue. This meant collecting taxes while funds from the federal grant remained in Fund 05.

The second fund in dispute, Fund 06, was used to pay principal and interest on a $441,016 issue of general obligation bonds sold in July, 1974, to finance

---

[2]

"RESOLUTION NO. 71-4
January 27, 1971

"WHEREAS, the Federal Water Quality Administration Grant to the BCVSA under WPC-ORE-279 shared with the cities of Medford, Central Point and Phoenix has been approved, and

"WHEREAS, it is the desire and intention of the Board of Directors of the Bear Creek Valley Sanitary Authority to apply the share of the Authority under said grant toward the payment, in whole or in part, of the principal and interest falling due under the BCI bond issue of February 1, 1970, and toward the payment, in whole or in part, of any interest accrued under short-term borrowing pursuant to ORS 287.403 to ORS 287.432 negotiated to pay principal or interest of said BCI bonds, now, therefore,

"BE IT RESOLVED, that the Bear Creek Valley Sanitary Authority establish a Bear Creek Interceptor Bond Reserve Fund No. 251 from which shall be paid, in whole or in part, principal or interest on the BCI bond issue of February 1, 1970, and from which shall be paid, in whole or in part, interest accrued under short-term borrowing pursuant to ORS 287.403 to ORS 287.432 negotiated to pay principal or interest on said BCI bonds, and it is further

"RESOLVED, that grant funds received under Federal Water Quality Administration Grant WPC-ORS-279 now in BCVSA Construction Fund No. 301 with accrued interest to the date of transfer, be transferred to BCI Bond Reserve Fund No. 251 for the purposes aforesaid, and it is further

"RESOLVED, that future funds received under Federal Water Quality Administration Grant WPC-ORE-279 be deposited to the BCI Bond Reserve Fund No. 251 for the purposes aforesaid."

sewers for several separate areas within the area of the Bear Creek Valley Sanitary Authority, bonds which were governed by the Bancroft Bonding Act, ORS 223.205 – 223.295, ORS 450.940. The Bancroft bonds were issued for improvements assessed against benefited property. Property owners could pay these assessments in installments at an interest of six percent, while the bonds were sold at an effective interest rate of 6.9567 percent. Money received by defendant from these bonds and assessments was invested by the county treasurer and returned less than six percent interest. As with Fund 05, defendant decided to levy a small uniform annual tax to cover the differential between the interest payments it received and those payable on the bonds, in order to avoid having to levy substantially larger taxes for this purpose during a few years in the future. This tax, too, was challenged because there was a net balance in Fund 06 sufficient to meet installments due on the bonds without the tax.

■■ The disputed issue concerning both funds is whether and how far the Local Budget Law requires the sanitary authority to use money remaining in each fund to meet payments due on its bonds before levying a tax. The Local Budget Law prescribes detailed procedure for preparing and adopting the budgets of the local governmental entities subject to the law. ORS 294.326 forbids a municipal corporation to levy a tax if it has not complied with the law's provisions. Two sections are of particular relevance in this case. ORS 294.381 provides that taxes estimated to be needed for the ensuing year are to be computed by the following formula:

"(1)   Add the estimated unappropriated ending balances referred to in ORS 294.371 to the estimate of expenditures.

"(2)   To the sum obtained in subsection (1) of this section add the amounts of moneys reserved pursuant to ORS 294.366 or any other law.

"(3)   From the sum obtained in subsection (2) of this section, subtract the estimate of budget resources

excluding the amount for taxes to be levied for the ensuing year.

"(4) To the remainder obtained in subsection (3) of this section, add an estimate of the discount allowed by ORS 311.505 and an allowance for taxes which will be levied but not collected in the ensuing year.

"(5) The sum obtained in subsection (4) of this section is the estimate of taxes to be levied for the ensuing year."

In other words, the tax estimate results primarily from computing the difference between estimated expenditures plus estimated unappropriated ending balances on the one hand and the estimated "budget resources" other than the tax levy on the other hand, with the other stated adjustments. ORS 294.361 in turn directs that the estimate of "budget resources" include balances of funds which will be carried over from the current year, estimated income from a variety of sources, and "apportionment, grant, contribution, payment or allocation from the federal or state government."[3]

Plaintiffs contend, and the tax court agreed, that these provisions compel the sanitary authority to count as "budget resources" the federal grant placed in Fund 05 and the net balance in Fund 06 and to exhaust these resources before levying a tax for any fiscal year. Defendant does not dispute that it must comply with the Local Budget Law. It defends its use of tax levies calculated to spread the necessary taxes at a level rate over the remaining payout period of the bonds primarily as good fiscal management which will save the authority money, particularly by retiring the BCI bonds, and thereby save taxes in the long run. Its policy may be sound and in accordance with one of the

---

[3] The definition section of the Local Budget Law, ORS 294.311, provides that "unless the context requires otherwise:"

. . . .

"(6) 'Budget resources' means resources to which recourse can be had to meet obligations and expenditures during the fiscal year covered by the budget."

purposes of the Local Budget Law, to "provide for the control of revenues and expenditures for the promotion of efficiency and economy in the expenditure of public funds." ORS 294.321(5). However, defendant has difficulty showing that it has legally escaped from the strictures of ORS 294.381 set forth above.

■ ORS 450.895, which empowers the authority to issue bonds, provides that such bonds shall mature serially and be paid "in annual instalments of such amounts as will make the combined amount of principal and interest payable each year as nearly equal as practicable during the years of payment." This expresses a legislative policy to spread the debt burden equally over the repayment period. But it does not modify ORS 294.381 so as to prevent fluctuations in tax levies when the income and other resources available to meet the debt vary from year to year.

■ With respect to Fund 05, defendant's primary reliance is on ORS 280.100. That section authorizes any "city, town or port . . . and any other subdivision"[4] to establish financial reserves or special funds without an election if the taxes levied or other funds used for the purpose of establishing the fund or funds are within the constitutional limitation on levying a tax beyond the taxing unit's "tax base." Or Const art XI, § 11. Subsection (3) of this section excludes taxes levied for the payment of bonds and the interest thereon from the limitation, which also does not relate to money obtained from grants. However, we do not have occasion to decide whether the sanitary authority might have placed its federal grant funds into a special reserve for the early retirement of bonds issued to finance a construction project, or for some related purpose limiting its use. *Cf.* 38 Op Att'y Gen 745 (1977). As we understand Resolution No. 71-4, quoted in note 2, above, this is not what the authority did. Rather, it placed these grant funds into its Fund 05 for

---

[4] ORS 280.040 defines "subdivision" to include "municipal corporations, quasi-municipal corporations and civil or political corporations . . . empowered by law to levy ad valorem taxes."

the general purpose of "payment, in whole or in part, of the principal and interest falling due" on the bond issue. Under that resolution, they remained "resources to which recourse can be had to meet obligations and expenditures during the fiscal year" within the definition of "budget resources" in ORS 294.311(6). As such, they had to be counted in the computation prescribed by ORS 294.381 before the sanitary authority could show a need for a tax levy.[5]

■   With respect to Fund 06, the Bancroft Bonding Act offers a little more support for defendant's position. ORS 223.245 provides that "the combined annual instalments of principal of and interest on the bonds shall be, as nearly as practicable, in such sums as will permit of a substantially uniform annual tax levy for the retirement of the principal of and the payment of the interest on the bonds . . ."[6] However, although this section states the goal of a "substantially uniform annual tax levy," the means to which the section is addressed is the repayment schedule of the bonds. In other words, the stated policy is to be achieved, "as

---

[5] Defendant's first assignment of error complains that the tax court opinion did not clearly state whether the funds so designated in its 1977-1978 budget were an "unappropriated ending fund balance" within the meaning of that term in ORS 294.371. However, there is no disagreement between the parties on this point and it does not determine the issue between them.

[6] ORS 223.245:

"The instalments of principal of the bonds shall be equal or substantially equal in amount, or the combined annual instalments of principal of and interest on the bonds shall be, as nearly as practicable, in such sums as will permit of a substantially uniform annual tax levy for the retirement of the principal of and the payment of the interest on the bonds as they respectively become due. . . . The interest on the bonds and the amounts of such instalments of maturing bonds shall be included in the annual budget of the city, and there shall be deducted in the budget such an amount as the city governing body conservatively estimates will be received from payments of the principal of and interest on instalments of assessments appertaining to the particular bond issue, and from receipts from sales and rentals of property acquired by the city pursuant to such assessments, during the year for which the levy is made."

The tax court opinion slightly misstated the tenor and effect of this section, 7 OTR at 201.

nearly as practicable," in setting the installments of principal and interest of the bond issue. This provision does not extend to manipulating the use of other available resources in order to achieve substantially uniform tax levies. ORS 223.245 does not override ORS 294.381.

Accordingly, the tax court correctly applied ORS 294.381 in this case so as to invalidate the tax levies under ORS 294.326.

Affirmed.