Argued and submitted April 16, affirmed as
modified July 21, reconsideration denied September 11,
petition for review allowed September 30, 1980

# SCHREIBER,
*Respondent,*

*v.*

# KARPOW,
*Appellant.*

## (No. 35036, CA 14977)

614 P2d 129

[237]

Terrance A. Hall, Hillsboro, argued the cause for appellant. On the briefs were David G. Frost, and Frost & Hall, Hillsboro.

Frank Noonan, Portland, argued the cause for respondent. With him on the brief was Winfree & Noonan, Portland.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

JOSEPH, P.J.

## JOSEPH, P.J.

Plaintiff sought specific performance of an earnest money agreement for the purchase of just under three acres of land. Defendant seller answered with several affirmative defenses. The trial court rejected each of them and entered a decree requiring defendant to convey in accordance with the earnest money agreement and to secure final approval of the subdivision, including the construction of an access road, at her expense. Defendant appeals. She argues that the earnest money agreement was rescinded because of a mutual mistake of the parties and that plaintiff's claim is barred by laches. She also claims that the court erred by entering a decree for performance which differs materially from the parties' agreement.

In November, 1974, defendant listed two parcels of land with a real estate agent. At the time of listing, defendant, who had had substantial experience in real estate transactions, informed the agent that the land was zoned residential and that it "had the approvals." The listing agreement indicated that the property was zoned residential, was "septic tank approved" and had city water. In February, 1975, plaintiff contacted the realtor about selling his house and purchasing other property on which to build. The realtor told plaintiff of the listing by defendant and assured plaintiff that the property was zoned residential and was "buildable." On February 22, 1975, plaintiff and defendant entered into an earnest money agreement for the sale of the two parcels for $14,900, $7,000 at closing and the balance on terms at interest. Plaintiff paid $500 earnest money.

Shortly after execution of the agreement, plaintiff applied for a building permit. His application was denied; he was informed that the land was not zoned residential and that only a preliminary subdivision plat had been filed. Under the Yamhill County

Comprehensive Plan adopted in August, 1974, the parcels were designated as Agricultural-Forestry, Large-Holding (20 acre lot size), and therefore were undersized for residential building. Plaintiff was assured by the realtor that defendant would take steps to get the property rezoned and have the subdivision plat approved.

In June, 1975, defendant filed an application with Yamhill County to amend the comprehensive plan. The application was considered at a public hearing before the Planning Commission on August 5, 1975, and before the Board of County Commissioners on September 3, 1975. An ordinance was enacted on September 16, 1975, amending the land use designation for the two parcels to low density residential. That decision was upheld on review by the Land Conservation and Development Commission, which issued its final order on May 5, 1976.

On August 25, 1976, defendant's attorney wrote a letter to plaintiff purporting to rescind the earnest money agreement, giving as a basis the existence of a mutual mistake of fact in that both parties erroneously believed that the property could be developed for residential purposes at the time of the execution of the agreement. Following that letter correspondence between the parties' attorneys was exchanged. Plaintiff refused to accept defendant's claim of rescission.

Meanwhile, a revised subdivision plat was submitted to the Yamhill County Planning Department. Numerous new problems were encountered, including the requirement of an access road. Finally, on November 9, 1977, the Board of County Commissioners approved the subdivision, subject to the construction of an access road and the filing of a final subdivision plat. Agreement was reached on the standards and specifications for the road construction on June 20, 1978. This suit for specific performance was filed on May 2, 1978.

■ Defendant first assigns as error the failure of the court to conclude that the earnest money contract was validly rescinded by defendant's letter of August 25, 1976, based on the parties' erroneous belief that the land was "buildable" at the time of execution of the earnest money. She claims that the zoning designation of the land in the comprehensive plan, of which neither party was allegedly aware, frustrated the purpose of the agreement and constituted a ground for rescission.

In *Shop. Centers v. Stand. Growth Prop.,* 265 Or 405, 498 P2d 781, 509 P2d 1189 (1973), the court restated the rules relating to rescission of a contract based on mutual mistake:

> "A contract may be rescinded if the parties enter into it through a mutual mistake on their part. Both parties must be mistaken. '[M]istake means a state of mind that is not in accord with the facts.' 2 Restatement 958, Contracts § 500. The mistake must be fundamental in character. *Highway Com. v. State Construction Co.,* 203 Or 414, 435, 280 P2d 370 (1955). Stated differently, 'Mistake Must Relate to Fundamental Assumption. It is often said that a mistake, in order to justify rescission, must relate to the intrinsic nature of the bargain ***.' 13 Williston, Contracts (3d ed) 94, § 1544." 265 Or at 422-423.

The evidence does not show that the parties were mutually mistaken as to the land use classification at the time of the execution of the contract. While defendant argues on appeal that she did not learn of the comprehensive plan's designation of the area until June, 1975, her testimony at trial included the following:

"Q And you told [the realtor] that you had all of your approvals on the land, didn't you?

"A Yes.

"Q And you assured her that it was zoned residential, didn't you?

"A Yes.

"Q And you entered into an earnest money agreement with Mr. Schreiber for the sale of both those parcels of land in February of 1975, did you not?

"A Yes.

"Q And you knew that Mr. Schreiber wanted to build a house on one or more of those parcels of land?

"A Yes.

"Q Now, at the time you listed the property with — with [the realtor] you knew that the approvals hadn't been obtained, didn't you?

"A Yes.

"Q And you knew that the land was not zoned residential, didn't you?

"A (Pause.) I — yes, yes."

We conclude, as did the trial court, that there was no mutual mistake of fact which would justify defendant's attempted rescission of the agreement.

 Defendant also argues that plaintiff's suit was barred by laches. She had the burden of proving the prerequisites for invoking the doctrine. *Hanns v. Hanns,* 246 Or 282, 423 P2d 499 (1967). She had to show that plaintiff had full knowledge of all the facts concurrently with a delay in initiating his suit for an unreasonable length of time. Laches cannot start to come into play until such time as the chargeable party has knowledge of all the facts. *Stephan v. Equitable S & L Assn.,* 268 Or 544, 522 P2d 478 (1974); *Alexander v. Central Ore. Irrig. Dist.,* 19 Or App 452, 528 P2d 582 (1974). This suit was filed approximately two weeks following agreement with the county on the standards and specifications for the access road, the final obstacle to approval of the subdivision. Prior to that time, plaintiff could not have known that the building permits could ultimately be approved, nor could he have been expected to seek specific performance during the pendency of the LCDC appeal. Moreover, although defendant attempted to rescind the agreement in 1976, she continued to try to advance the project through the county after that time, giving plaintiff reason to believe that the subdivision and building permits might ultimately be approved. Finally, she made no showing of prejudice except that the market value of the land materially appreciated during the delay.

Defendant claims that the trial court inappropriately entered a decree which differs materially from the agreement sought to be specifically enforced by plaintiff. Defendant objected to the decree in the trial court for several reasons: 1) she would have to construct an access road and have the costs of construction paid out of the purchase price; 2) the description in the decree was for land of a different area and configuration; 3) the decree would require her to pay all the costs of escrow; and 4) it would provide for a lump sum payment without interest, instead of deferred payments with interest.

■ The earnest money agreement did not contain a specific provision regarding construction or costs of an access road. However, the contract provided: "This transaction subject to purchaser obtaining septic tank approval, and building permit." Plaintiff had a right to insist on the terms of the contract (*Wittick v. Miles,* 274 Or 1, 545 P2d 121 (1976)), which included building permit approval. The evidence shows that an access road was necessary to obtain a permit. To impose the cost of the road on defendant under the prayer for general relief was appropriate under the evidence presented. *See Stan Wiley v. Berg,* 282 Or 9, 21, 578 P2d 384 (1978). The variance in the property description was a consequence of the subdivision and road approval and was necessary to protect the plaintiff's rights.

■ The agreement to share equally the escrow costs should not have been changed, nor should the terms of payment. However, with respect to the latter, in the circumstances the decree should provide for interest at the agreed rate on the whole unpaid balance from June 20, 1978, until the $7,000 due at closing is paid and thereafter as provided in the earnest money agreement.

Affirmed as modified.