Argued and submitted May 11, reversed and
remanded July 27, reconsideration denied September 17,
petition for review denied November 17, 1981 (292 Or 108)

# BEAR CREEK VALLEY SANITARY
# AUTHORITY ex rel BASHAW et al,
## *Appellants,*
### *v.*
# HOPKINS et al,
## *Respondents,*

## (No. 75-997-E-2, CA 19065)

631 P2d 808

Stanley Carroll Jones, Jr., Klamath Falls, argued the cause for appellants. With him on the briefs were Steven A. Zamsky, E. R. Bashaw, and Giacomini, Jones & Associates, Klamath Falls.

Ervin B. Hogan, Medford, Oregon, argued the cause and filed the brief for respondents.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

■     This is an action by the Bear Creek Valley Sanitary Authority on behalf of two of its taxpayers against the directors of the Authority pursuant to ORS 294.100, *post.* The taxpayers seek the return of moneys which they allege were expended by the Authority for purposes other than those authorized by law and an injunction forbidding the further unauthorized use of the Authority's funds. The trial court granted summary judgment in favor of the defendants, and plaintiffs appeal.[1] We reverse.

This dispute arose from the issuance of bonds by the Authority in 1970 to finance the construction of a sewer project known as the Bear Creek Interceptor (BCI). The Authority, after receiving voter approval, issued $4,860,000 in general obligation bonds to finance the construction of the BCI. The Authority also eventually received state and federal grants totalling over three million dollars related to the BCI construction.

The taxpayers challenge the disposition of both the bond sale proceeds and the grant moneys received by the Authority. They contend that, between fiscal years 1970 and 1975, the directors expended both bond and grant funds for unauthorized purposes. They rely on ORS 450.920, which provides:

"The proceeds of the sale of bonds shall be deposited with the county treasurer who is custodian of the funds of the authority and shall be placed by him in the sanitary authority fund and credited to a special account or accounts which are designated for use for the particular purpose or purposes for which the bond proceeds are to be used. *The proceeds of such bonds shall be used solely for the purpose or purposes indicated in the order calling for election upon the question of the issuance of the bonds and for no other purpose.* However, the proceeds of the sale of the bonds may be used for payment of the principal and

---

[1] In addition to the granting of defendants' motion for summary judgment, the taxpayer plaintiffs appeal the denial of their summary judgment motion and the failure of the trial court to award attorney fees on the basis of the fact that certain moneys had been restored to the proper accounts since the commencement of the suit. Because of our disposition of this case we do not reach the issue of attorney fees. The denial of a motion for summary judgment is not appealable. *Polsfoot v. Transamerica Title,* 47 Or App 261, 614 P2d 1173 (1980).

interest of such bonds and expenses of the formation of the authority." (Emphasis supplied.)[2]

It is the taxpayers' contention that the directors have used the bond proceeds for purposes other than those indicated in the order calling for the election on the issuance of the bonds (set out in part in the margin),[3] and that the directors are liable for the return of the amounts so expended pursuant to ORS 294.100(2):

"(2) Any public official who expends any public money in excess of the amounts, or for any other or different purpose or purposes than authorized by law, shall be civilly liable for the return of the money by suit of the district attorney of the district where the offense is committed, or at the suit of any taxpayer of such district."

Defendants' motion for summary judgment was granted by the trial court on two grounds: that defendants relied in good faith on the advice of counsel in making the decisions to expend the funds as they did, and that the funds were all expended for proper purposes, so that neither the Authority nor its taxpayers were injured. Defendants also suggest several other bases upon which the summary judgment can be supported: (1) the expenditures were in fact all appropriate because all *bond sale* proceeds were used for construction of the BCI and there was no restriction on the use of the grant moneys received by the Authority; (2) all expenditures were authorized by the budgets for each of the years in which they were made as required by the Local Budget Law, ORS 294.305 *et seq.,* and the directors may not be held liable for such budgeted expenditures; and (3) the taxpayers are barred by laches from bringing this action.

---

[2] As will appear *post,* there were also *grant* funds obtained as a result of the *bond* authorization. Because of their commingling with the bond proceeds, the use made of them is also challenged by the appellants.

[3] "There is hereby called a bond election to be held within the Bear Creek Valley Sanitary Authority on the 23rd day of June, 1969, between the hours of 8:00 o'clock p.m., [sic] for the purpose of submitting to the qualified electors who are residents of the Authority, the question of issuing General Obligation Bonds according to the provisions of ORS 450.705 to 450.990 in not more than the sum of $4,860,000.00 for the purpose of pay 58% of the cost of the construction of all of the interceptor sewer system except the Central Point section of the Lower Bear Creek Interceptor, and 96.25% of the cost of construction of the Central Point section of the Lower Bear Creek Interceptor, which said Interceptor Sewer System consists of the following: * * *."

■ The granting of summary judgment is appropriate only when there is no material issue of fact and the moving party is entitled to judgment as a matter of law. ORCP 47(C); *Seeborg v. General Motors Corporation,* 284 Or 695, 588 P2d 1100 (1978); *Wilford v. Crater Lake Motors, Inc.,* 277 Or 709, 561 P2d 1027 (1977). We consider each of defendants' proffered justifications for summary judgment.

## ADVICE OF COUNSEL

■ The advice of counsel defense relied upon by the trial court was enunciated in *State ex rel v. Mott,* 163 Or 631, 97 P2d 950 (1940), in which the Secretary of State had been advised by the Attorney General that a particular claim was valid. The court said:

> "While the secretary of state was not bound to follow such opinion, he had the right to do so and is protected while acting in good faith even though it is assumed the same was erroneous * * *. If the law were otherwise few responsible administrative officers would care to assume the hazards of rendering close decisions in public affairs. Officers acting in good faith have a right to rely on the opinion of the attorney general, as he is the officer designated by law to render such service for their guidance and protection. What has been said has no application, however, where the officer to whom the opinion is given participates in the fruits of a wrongful or unlawful act. In such cases the advice of the attorney general is no defense." 163 Or at 640.

*And see Cannon v. Taylor,* 88 Nev 89, 493 P2d 1313 (1972); *State v. Spring City,* 123 Utah 471, 260 P2d 527 (1953); *see also Stanson v. Mott,* 17 Cal 3d 206, 130 Cal Rptr 697, 551 P2d 1 (1976).

This case differs from *State ex rel v. Mott* in one important respect: Defendants here have indicated that they relied upon the advice of the general counsel for the Authority, a private attorney, in making the decisions to expend the funds as they did. They contend that they may not call upon the Attorney General to advise them, *see* ORS 180.060(2) and (3)[4], and must, therefore, rely upon private

---

[4] ORS 180.060(2) and (3) provide:

counsel. They contend that the same policy which supports the defense of advice of counsel when such advice is given by the Attorney General also applies to the situation in which municipal officers rely in good faith upon the advice of private counsel.

In *Porter v. Tiffany,* 11 Or App 542, 502 P2d 1385 (1972), *rev den* (1973), this court was presented with a defense of advice of counsel in an action under ORS 294.100 against members of the Eugene Water and Electric Board. There we found that the board members had not followed the advice given by their counsel and had not established their defense. We noted that, because the defense had not been established, it was not necessary to decide whether *Mott* should be extended to apply to reliance upon the advice of private counsel. The present case requires resolution of that question.

We recognize that there are significant differences between reliance on the advice of private counsel and reliance on the advice of the Attorney General. For one thing, counsel for the Authority is retained by it and is subject to dismissal by it, while the Attorney General is an elected public official who has a broader responsibility. We believe, however, that the policy expressed in *Mott* militates in favor of allowing a defense of good faith reliance on advice of counsel to public officers such as the directors in this case. We do not believe that local officials should be required to make complex decisions regarding expenditures of public funds without the advice of counsel and at their own risk. Such a requirement would discourage competent individuals from seeking or accepting such positions and would be a detriment to local government. We hold that the defense is available to these defendants.

---

"(2) The Attorney General shall give his opinion in writing, when requested, upon any question of law in which the State of Oregon or any public subdivision thereof may have an interest, *submitted to him by the Governor, any officer, department, agency, board or commission of the state or any member of the legislature.*

"(3) The Attorney General shall not render opinions or give legal advice to others than such state officers listed in subsection (2) of this section." (Emphasis supplied.)

*See* 38 Op Att'y Gen 304 (1976) (Attorney General not permitted by statute to advise local officials).

■    Turning to the affidavits submitted by the parties, however, we find that issues of fact remain regarding the advice of counsel defense which make the granting of the summary judgment on that ground erroneous. In order to establish the defense of advice of counsel defendants must show that they relied in good faith and without personal benefit upon the advice that was given by their attorney. *See State ex rel v. Mott, supra.*

■    There is no contention here that defendants personally benefited from any of the expenditures at issue. Defendants have submitted an affidavit from the general counsel for the Authority stating that he advised them regarding the propriety of certain expenditures. However, the only affidavit which attempts to establish that the directors actually relied in good faith on such advice is that of W. B. Brill, a member of the Authority's board of directors during all relevant times. This affidavit distinguishes between expenditures of direct proceeds of the bond sale and grant moneys received. It states in part:

> "The directors of the Authority at no time expended or authorized the expenditure of any of the proceeds of the bond sale referred to in plaintiffs' complaint for any purpose other than the payment of costs of construction of the Bear Creek Interceptor or payment upon the principal and interest accruing upon said bond issue excepting only [an advance made to another fund for acquisition of office facilities which has since been repaid.] * * *.
>
> "In authorizing said advance * * * the directors sought and in good faith relied upon the advice of Manville Heisel, attorney for the Authority, to the effect that such advance was lawful and proper."[5]

This affidavit is insufficient because it appears that at least one other expenditure from the direct bond proceeds is challenged by plaintiffs, *viz.,* a transfer of $314,850 from the BCI construction fund to the Engineering Revolving Fund in 1970. Although defendants' evidence (an affidavit of William C. Corrin) indicates that that transfer was reimbursement for engineering fees and expenses incurred in connection with the design of the BCI

[5] Plaintiff does not challenge the appropriateness of *one* member of the board of directors averring that all members relied in good faith on the advice of counsel.

project and for funding the expense of topographic mapping necessary in connection with the design and utilization of the BCI, plaintiffs' evidence (an affidavit of Edward T. O'Conner) indicates that the items referred to were outside the sewer and pumping station construction for which the bonds were issued. There is, then, a question of fact presented as to whether the expenditure was proper. The Brill affidavit makes no reference to that transfer and does not show that the directors relied upon the advice of counsel in authorizing it.

As to the grant moneys, both state and federal, received by the Authority in connection with the BCI construction, the Brill affidavit states:

> "* * * [I]n utilizing said construction grant proceeds as set forth above, the directors have sought and in good faith relied upon the advice of Manville M. Heisel, general counsel for the Authority, that each of such uses was lawful and proper and in addition upon the advice of the federal agencies administering such grants that the use of such funds was unrestricted."

The affidavit of Manville Heisel, however, indicates that as to at least one of the expenditures at issue he was consulted by and advised the *manager* of the Authority rather than defendants. That involved the transfer to the general fund of over $449,000 to cover the indirect costs incurred in the administration of the BCI project. Plaintiffs' evidence (the O'Conner affidavit) indicates that the transfer was not for items appropriately considered as part of the cost of the BCI and that the amount of the transfer was in excess of a reasonable allowance for overhead. We find that a fact question is presented by the advice of counsel defense as it relates to this expenditure.[6]

Finally, we agree with plaintiffs that defendants' claim of good faith reliance on the advice of counsel is called into question by the existence, at the time of certain

---

[6] Defendants contend that they may not be held liable for this transfer because they did not authorize it. They presented evidence to indicate that the transfer was a bookkeeping entry made by the Authority's management in which the directors had no part. There is, however, evidence in the record to indicate that the "Authority" adopted a set percentage of construction costs formula which would be used to determine overhead in construction projects. A fact question therefore also exists regarding the transfer for overhead.

of the expenditures at issue, of a resolution of the Authority which declared it to be the policy of the Authority that the proceeds received from Federal Water Quality Administration Grant WPC-ORE-297 would be used to fund the indebtedness on the bonds which had been issued.

The Authority received two types of grants from the federal government relating to the construction of the BCI. The first grant money received was anticipated at the time of the election on the bond issue and was referred to generally in the publicity calling the election. The grant had been approved and was the subject of the Authority's resolution 71-4 on January 27, 1971, which stated:

"Whereas, it is the desire and intention of the Board of Directors of the Bear Creek Valley Sanitary Authority to apply the share of the Authority under [WPC-ORE-279] toward the payment, in whole or in part, of the principal and interest falling due under the BCI bond issue of February 1, 1970, and toward the payment, in whole or in part, of any interest accrued under short-term borrowing pursuant to ORS 287.403 to ORS 287.432 negotiated to pay principal or interest of said BCI bonds, now, therefore,

"* * * * *

"[BE IT] RESOLVED, that grant funds received under Federal Water Quality Administration Grant WPC-ORE-279 now in BCVSA Construction Fund No. 301 with accrued interest to the date of transfer, be transferred to BCI Bond Reserve Fund No. 251 for the purposes aforesaid, and it is further

"RESOLVED, that future funds received under Federal Water Quality Administration Grant WPC-ORE-279 be deposited to the BCI Bond Reserve Fund No. 251 for the purposes aforesaid."

In 1973, when a question was put by taxpayers to the Authority as to the use being made of the grant moneys received, the Authority again reaffirmed its intention that such grant moneys be applied to payment of the principal and interest on the BCI bonds. It is admitted by defendants, however, that certain of the grant moneys from WPC-ORE-279 were used for other purposes, at least temporarily, during that time. We believe that the existence of those two contrary positions by the defendants inferentially raised a question of the directors' good faith reliance on the advice of counsel in making expenditures, not only of

the WPC-ORE-279 grant proceeds during the time that resolution was in effect but of the bond proceeds as well. This question can only be resolved by further evidence.[7]

## LACK OF INJURY TO AUTHORITY AND TAXPAYERS

The trial court also granted summary judgment on the ground that "all expenditures made by the defendant Directors were for proper purposes, and neither the Bear Creek Valley Sanitary Authority, nor its taxpayers, suffered any damage." We understand this to be an expression of two related grounds for the judgment: the expenditures were all for generally proper purposes of the Authority and not for personal profit, and there was no damage to the Authority or its taxpayers.

■ It does appear from the record before us that the expenditures challenged by plaintiffs were all made for the general purposes for which the Authority may act, that is, to build and maintain sewers. It also appears that there was no dishonesty or self-dealing by the directors, and there is no allegation by plaintiffs that defendants personally profited by the expenditures made. We conclude, however, that ORS 294.100 and ORS 450.920, when read together, provide that defendants could be held liable for expenditures of bond proceeds for purposes other than those indicated in the order calling for the election on the issuance of the bonds. The only purposes for which proceeds of any bond sale may be used are those specified in the

---

[7] The Authority also received, apparently beginning in 1974, proceeds of a reimbursement grant provided by the federal government pursuant to 33 USC § 1286, enacted in 1972, which provides, in part:

"(a) Any publicly owned treatment works in a State on which construction was initiated after June 30, 1966, but before July 1, 1972, which was approved by the appropriate State water pollution control agency and which the Administrator finds meets the requirements of section 8 of this Act in effect at the time of the initiation of construction shall be reimbursed a total amount equal to the difference between the amount of Federal financial assistance, if any, received under such section 8 for such project and 50 per centum of the project cost where the Administrator also determines that such treatment works was constructed in conformity with a comprehensive metropolitan treatment plan as described in section 8(f) of the Federal Water Pollution Control Act as in effect immediately prior to the date of enactment of the Federal Water Pollution Control Act Amendments of 1972. * * *."

We need not now decide whether there may be different treatment of the grant funds received under this later grant.

order calling the election. ORS 450.920. Any other use would be other or different than authorized by law and could subject the directors to liability. ORS 294.100(2).

■     As to the question of injury to the Authority or its taxpayers, plaintiffs' evidence indicates that the taxpayers have been assessed over $1,500,000 in additional taxes to repay the bonds, when a different application of the bond and grant proceeds could have gone to pay those bonds and the attendant interest. Defendants have produced no evidence to the contrary. The fact that other sewer projects may have been financed with the proceeds in question here does not obviate plaintiffs' complaint. Those other projects, if they had been presented to the voters for approval of further indebtedness by the Authority, might have been rejected. We cannot say on the record before us that as a matter of law the taxpayers here have not been injured.

## ALL EXPENDITURES APPROPRIATE

■     Defendants also argue that the trial court's granting of summary judgment can be supported by a showing that all of the expenditures at issue here were in fact authorized by law. Defendants claim that the only challenged expenditures which were made from the direct proceeds of the bond sale were a loan to another fund of the Authority for the acquisition of office space, which has been repaid, and the transfer of $314,850 to the Engineering Revolving Fund, which was in fact an expense appropriately chargeable to the construction of the BCI. Defendants contend that all other challenged expenditures were made from grant moneys received from the federal government and that use of those grant moneys was not restricted by ORS 450.920.[8]

---

[8] *Bashaw v. Bear Creek Valley Sanitary Authority,* 287 Or 113, 597 P2d 882 (1979), affirmed an action of the Tax Court which declared that "the levy of any taxes by the [Authority] for the tax year 1977-1978 was void to the extent that other available [budget] resources made such levy unnecessary," after a challenge to the Authority's 1977-1978 budget pursuant to ORS 294.485. The other available resources at issue in that case were in part federal grant moneys received because of the BCI construction which were deposited by the Authority in a fund designated to be used for the payment of the BCI bonds. The court concluded that, because of Resolution 71-4, quoted above, the grant moneys must be considered as budget resources under ORS 294.311(6). The court stated, however,

On the basis of the evidence presently in the record, we do not agree. First, as noted above, there is a fact question remaining whether the transfer of what are agreed to have been bond sale proceeds to the Engineering Fund was appropriately chargeable as an expense of BCI construction and whether the amount of such transfer exceeded a reasonable charge for such expenses even if some charge were allowable. In addition, although defendants' affidavits indicate that the advance for acquisition of office space and the transfer to the Engineering Fund were the only expenditures made from the direct proceeds of the bond sale, the O'Conner affidavit, submitted on behalf of plaintiffs, indicates that other expenditures were made from bond and grant funds. There is also an indication in the record that the grant and bond funds may have been deposited in the same accounts and may not have always been segregated by defendants. Therefore, even if we were to accept defendants' theory that the use of the grant moneys was not restricted by ORS 450.920, this record does not establish that there is no material issue of fact as to the source of the funds involved in each expenditure.

## LOCAL BUDGET LAW

Defendants further contend that all of the expenditures of which the taxpayers complain were included in the budgets for the years in which they were made and that this fact relieves them of liability for such expenditures under ORS 294.100. The record does establish that the expenditures made by defendants were included in the budgets for the years in which they were made. Further, it is not contended that the requirements of the Local Budget Law, ORS 294.305 *et seq.,* were not complied with by defendants. The purported authorization of the expenditures by the budget process cannot avoid the language of

---

"\* \* \* we do not have occasion to decide whether the sanitary authority might have placed its federal grant funds into a special reserve for the early retirement of bonds issued to finance a construction project, or for some related purpose limiting its use. *Cf.* 38 Op Att'y Gen 745 (1977)." 287 Or at 120.

The parties do not contend that the determination that the grant funds received by the Authority and deposited in the bond payment fund were "budget resources" as that term is used in the Local Budget Law is determinitive of any issue in this case.

ORS 450.920, which restricts the use that a sanitary authority may make of bond proceeds. While defendants may be correct that they cannot be held liable on the basis of the budget process in which they participated, that does not mean that participation in the budget process relieves them of liability under ORS 294.100.

## LACHES

■ The final basis upon which defendants contend that they were entitled to summary judgment is that the taxpayers' claims are barred by laches. In support of this contention defendants rely on the fact that all of the expenditures complained of were authorized by the budgets for the years in which they were made. They argue that plaintiffs must have been aware of the expenditures because of the budget process, but did not object at the time or, in the case of certain of the expenditures, for several years thereafter.

> "In order to constitute laches there must have been full knowledge of all of the facts, concurring with a delay for an unreasonable length of time, and laches does not start to run until such knowledge is shown to exist. * * * In addition, the delay must result in substantial prejudice to the defendant to the extent that it would be inequitable to afford the relief sought against the party asserting laches as a defense. * * *." *Stephan v. Equitable S & L Assn.,* 268 Or 544, 569, 522 P2d 478 (1974); *and see Schreiber v. Karpow,* 47 Or App 237, 614 P2d 129 (1980), *modified on other grounds* 290 Or 817, 626 P2d 891 (1981).

Defendants have not shown when the taxpayers had complete knowledge of all of the facts involved nor have they shown any specific prejudice resulting from whatever delay there may have been in bringing this action. There is no basis in this record for the granting of summary judgment in favor of defendants on the ground of laches.

Reversed and remanded.